*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCAP-17-0000059
08-AUG-2018
08:01 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

E. KALANI FLORES,
Appellant-Appellee,

vs.

BOARD OF LAND AND NATURAL RESOURCES; DEPARTMENT OF LAND AND
NATURAL RESOURCES; SUZANNE D. CASE, in her official capacity as
Chairperson of the Board of Land and Natural Resources,
STATE OF HAWAI'I,
Appellees-Appellants/Cross-Appellees,

and

UNIVERSITY OF HAWAI'I,
Appellee-Appellee/Cross-Appellant.

SCAP-17-0000059

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
ENVIRONMENTAL COURT
(CAAP-17-0000059; CIV. NO. 14-1-324)

AUGUST 8, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

In May 2014, Appellee-Appellee/Cross-Appellant

University of Hawai'i (the University) requested that Appellee-

Appellant/Cross-Appellee Board of Land and Natural Resources
(BLNR) consent to a sublease that the University intended to
enter into with TMT International Observatory LLC (TIO) for the
construction of the Thirty Meter Telescope (TMT) on the Mauna Kea
Science Reserve (Sublease).  BLNR subsequently addressed the
University's request for its consent to the Sublease at two
separate public meetings.  At both meetings, Appellant-Appellee
E. Kalani Flores (Flores) orally requested that BLNR hold a
contested case hearing prior to making a decision on the matter.
Following the second meeting, Flores filed a written petition for
a contested case hearing.  BLNR denied Flores's request and
consented to the Sublease.

On secondary appeal, BLNR and the University argue that
Flores appealed BLNR's denial of his request for a
contested case hearing to the Environmental Court of the Third
Circuit (environmental court).  The environmental court ruled
that based upon this court's opinion in Mauna Kea Anaina Hou v.
Board of Land and Natural Resources, 136 Hawaiʻi 376, 363 P.3d
224 (2015), BLNR infringed upon Flores's constitutional rights by
rejecting his request for a contested case hearing.

On secondary appeal, BLNR and the University argue that
the environmental court erred in ruling that Flores was entitled
to a contested case hearing because:  (1) BLNR's consent to the
Sublease did not fall within the purview of Hawaiʻi Revised

2

Statutes (HRS) Chapter 91, as BLNR was acting as a landlord engaged in the custodial management of public property; and (2) a contested case hearing was not required by law because it was not mandated by statute, administrative rule, or due process.

For the reasons stated below, we reject BLNR's and the University's argument that HRS Chapter 91 does not apply in this case. However, we agree with BLNR and the University that BLNR was not required to hold a contested case hearing prior to consenting to the Sublease because such a hearing was not required by statute, administrative rule, or due process under the circumstances of this case. Consequently, we hold that the environmental court erred in ruling that BLNR violated Flores's constitutional rights when it denied his request for a contested case hearing in this case.

Accordingly, we reverse the environmental court's January 6, 2017 Final Judgment and "Order Granting in Part and Denying in Part Appellees State of Hawaiʻi, Board of Land and Natural Resources, Department of Land and Natural Resources, and Chairperson Suzanne D. Case's Motion for Stay of Proceedings, or in the Alternative for the Court to Issue its Decision on Appeal, Filed October 25, 2016; Vacating Consent to Sublease and Non-Exclusive Easement Agreement Between TMT International Observatory LLC and the University of Hawaii Under General Lease

No. S-4191; and Remanding Matter to the Board of Land and Natural Resources" (Order).

## I.   BACKGROUND

On June 21, 1968, BLNR leased the land within the Mauna Kea Science Reserve to the University for a term of sixty-five years (Master Lease).  The Master Lease is set to expire on December 31, 2033, and permits the University to use the leased premises "as a scientific complex, including without limitation thereof an observatory, and as a scientific reserve being more specifically a buffer zone to prevent the intrusion of activities inimical to said scientific complex."  Pursuant to paragraph five of the Master Lease, the University "shall not sublease . . . any rights thereunder without the prior written approval of [BLNR]."

On May 22, 2014, Donald O. Straney (Straney), the Chancellor of the University of Hawaiʻi at Hilo, sent BLNR a written request for BLNR's approval and consent to the Sublease. Straney stated that the University intended to sublease an 8.7-acre portion of the Mauna Kea Science Reserve, which was covered by the Master Lease, to TIO for the construction and operation of the TMT.

The Sublease is set to expire on December 31, 2033, the same date that the Master Lease is set to terminate.  With respect to the use of the subleased premises, the Sublease

4

provides, in relevant part:

> Sublessee shall use the Subleased Premises solely to construct and operate the TMT Facilities in accordance with this Sublease and the Scientific Cooperation Agreement.  The construction and operation of the Subleased Premises shall be conducted in strict compliance with the terms and conditions of Conservation District Use Permit HA-3568 approved by the Lessor on April 12, 2013 (the "TMT CDUP"), including performance of all mitigation conditions set forth therein, and any amended or subsequent Conservation District Use Permit.  Sublessee shall not at any time during the term of this Sublease construct, place, maintain, or install on the Subleased Premises any other building, structure, or improvement without the prior written approval of Sublessor and Lessor and upon such conditions as Sublessor or Lessor may impose.  For purposes of the foregoing sentence, any other "improvement" means improvements that are not specified in or contemplated by the TMT CDUP and not contained within the building envelop of TMT observatory plans approved in accordance with Section 37 below.

Concerning the rights of Native Hawaiians with respect to the subleased premises, the Sublease provides:

> The Constitution of the State of Hawaii mandates the protection of recognized customary and traditional native Hawaiian rights subject to State regulation. This Sublease shall be subject to the right of Native Hawaiians to exercise protected traditional and customary practices as provided in the [Comprehensive Management Plan] and consistent with the laws of the State of Hawaii.

## A.    BLNR Administrative Proceedings

On June 13, 2014, BLNR held a public meeting addressing, <u>inter alia</u>, the University's request for BLNR's consent to the Sublease (first public meeting).  At the first public meeting, Flores provided oral and written testimony on the numerous reasons underlying his position that BLNR should not consent to the Sublease, and orally requested that BLNR hold a

5

contested case hearing before rendering a decision on the University's request. No action was taken on Flores's request for a contested case hearing at the first public meeting.

Ultimately, BLNR did not rule on the University's request for BLNR's consent to the Sublease at the first public meeting. Instead, BLNR deferred the issue for consideration at a later date to allow the University to address the questions and issues raised during the public testimony on the matter.

BLNR revisited the University's request for BLNR's consent to the Sublease at a public meeting held on June 27, 2014 (second public meeting). At the second public meeting, Flores provided further oral testimony and submitted additional written testimony explaining the reasons why, in his view, BLNR should not consent to the Sublease. Flores also orally renewed his request for a contested case hearing and submitted a written petition for a contested case hearing.

Following the completion of public testimony at the second public meeting, BLNR approved the University's request for its consent to the Sublease. However, BLNR provided that the effect of its consent was "stayed . . . until administrative proceedings on any contested case requests are concluded." No action was taken regarding Flores's request for a contested case hearing at the second public meeting.

6

On July 3, 2014, Flores filed his written petition for a contested case hearing. Flores stated that his interest in BLNR's consent to the Sublease, which entitled him to a contested case hearing, stemmed from, inter alia, his interest in participating in "traditional and customary practices" on the subleased premises.

Following the receipt of Flores's request, the Acting Administrator of BLNR completed a staff report recommending that Flores's request be denied. According to the staff report, no statute or administrative rule required BLNR to hold a contested case hearing prior to consenting to a sublease of public lands. The staff report also concluded that the due process clause of the Hawaiʻi Constitution did not mandate BLNR to hold a contested case hearing, as Flores did not demonstrate that he had a property interest in BLNR's consent to the Sublease. Lastly, the staff report stated that BLNR was not required to hold a contested case hearing before consenting to the Sublease because such action "is a matter of internal land management, and not subject to a contested case."

BLNR addressed Flores's request for a contested case hearing at a public meeting held on July 25, 2014 (third public meeting). At the third public meeting, Flores orally testified that BLNR's approval of the Sublease at the second public meeting

7

was invalid, and submitted further written testimony on the matter. After hearing all of the public testimony on the matter, BLNR approved the staff report's recommendation, and denied Flores's request for a contested case hearing.

BLNR issued its formal written consent to the Sublease on April, 9, 2015 (Consent).

## B. Appellate Proceedings at the Environmental Court

On August 25, 2014, Flores appealed the denial of his request for a contested case hearing to the Circuit Court of the Third Circuit. The case was transferred to the environmental court on October 2, 2015.[1]

In his pro se opening brief, Flores argued, inter alia,[2] that BLNR erred in denying his request for a contested case hearing because, among other reasons, Flores "is a traditional and customary practitioner whose rights this Court should acknowledge by allowing his participation in the requested contested case hearing." Additionally, Flores argued that BLNR

---

[1] The case remained with the same presiding judge, as the Honorable Greg K. Nakamura sits as a circuit court judge and an environmental court judge.

[2] Flores also argued that BLNR should not have consented to the Sublease for numerous other unrelated reasons. However, because he does not raise or renew these arguments in his answering brief on secondary appeal, we do not address them. See Hawaiʻi Rules of Appellate Procedure (HRAP) Rules 28(b)(7) ("Points not argued [in the opening brief] many be deemed waived") and 28(c) (providing that the answering brief "shall be of like character as that required for an opening brief").

infringed upon his constitutional right to due process by consenting to the Sublease before resolving his request for a contested case hearing.

In their answering briefs, BLNR and the University countered that BLNR properly denied Flores's request for a contested case hearing because his request was not supported by statute or any administrative rules, and because Flores did not have a due process right to a contested case hearing insofar as he did not demonstrate that he had a constitutionally cognizable property interest in the Sublease. Further, BLNR and the University argued that Flores was not entitled to a contested case hearing because BLNR's consent to the Sublease was a matter of internal agency management, and fell outside the purview of HRS Chapter 91.

After the answering briefs were filed, this court issued its opinion in <u>Mauna Kea Anaina Hou</u>. At issue in <u>Mauna Kea Anaina Hou</u> was whether BLNR violated the appellants' due process rights by issuing a Conservation District Use Permit (CDUP) authorizing the TMT's construction before holding a contested case hearing on the matter. 136 Hawai'i at 380, 363 P.3d at 228. This court first held that the appellants were entitled to a contested case hearing, reasoning:

> Given the substantial interests of Native
> Hawaiians in pursuing their cultural practices on

9

> Mauna Kea, the risk of an erroneous deprivation absent the protections provided by a contested case hearing, and the lack of undue burden on the government in affording Appellants a contested case hearing, a contested case hearing was "required by law" regardless of whether BLNR had voted to approve one on its own motion at the February 25, 2011 meeting.

Id. at 390, 363 P.3d at 238 (quoting Sandy Beach Def. Fund v. City & Cty. of Honolulu, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989)). The Mauna Kea Anaina Hou court then concluded:

> In sum, BLNR put the cart before the horse when it approved the permit before the contested case hearing was held. Once the permit was granted, Appellants were denied the most basic element of procedural due process--an opportunity to be heard at a meaningful time and in a meaningful manner. Our Constitution demands more.

Id. at 391, 363 P.3d at 239. Accordingly, this court vacated the circuit court's decision affirming BLNR's order granting a CDUP for the TMT project. Id. at 399, 363 P.3d at 247. The case was remanded to the circuit court to further remand the case to BLNR, so that another contested case hearing could be conducted before BLNR or a new hearing officer. Id.

On January 13, 2016, Flores filed his reply brief. Flores requested that the environmental court take judicial notice of this court's decision in Mauna Kea Anaina Hou, which, he argued, further supported that BLNR should have held a contested case hearing before consenting to the Sublease.

At the oral argument regarding Flores's appeal, the environmental court took judicial notice of this court's opinion

10

in Mauna Kea Anaina Hou and the order of remand that was filed in that case. Subsequently, the environmental court orally ordered that the case be remanded to BLNR so that BLNR may consider the opinion and the order.

On April 5, 2016, the environmental court filed an order remanding the case to BLNR pursuant to HRS § 91-14(e).[3] The environmental court ruled that the fact that the CDUP had been vacated was "material because the Sublease and Consent are premised upon the existence of the TMT CDUP," and noted that "[t]his fact could not have been presented to [BLNR] when it considered the application for the consent to the Sublease because the fact did not exist at that time." Therefore, the environmental court remanded the case to BLNR to reconsider its decision to consent to the Sublease in light of Mauna Kea Anaina Hou.

On October 25, 2016, BLNR filed a motion to stay the

_____

[3] HRS § 91-14(e) (2012) provides:

> If, before the date set for hearing, application is made to the court for leave to present additional evidence material to the issue in the case, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon such conditions as the court deems proper. The agency may modify its findings, decision, and order by reason of the additional evidence and shall file with the reviewing court, to become a part of the record, the additional evidence, together with any modifications or new findings or decision.

11

proceedings in Flores's appeal until, pursuant to this court's mandate in Mauna Kea Anaina Hou, BLNR determined whether to issue the CDUP after holding another contested case hearing on the matter.  Alternatively, BLNR requested that the environmental court "issue its decision on appeal at this time."

Flores, now represented by counsel, objected to BLNR's request for a stay, but joined in BLNR's request for an immediate decision.  Flores argued that "[a]s there is no just reason to delay a decision at this time, this Court should go ahead and rule" on whether Flores "has a right to a contested case hearing" and "whether [BLNR's] Consent to [the] sublease entered into between [the University] and [TIO] is valid."

In reply, BLNR asserted that if the environmental court issued a ruling on the appeal, the ruling should be limited to whether Flores was entitled to a contested case hearing because "[t]he sole issue in this administrative appeal is whether a contested case should have been held.  The merits of the consent are not at issue."

On January 6, 2017, the environmental court filed the Order.  The Order denied BLNR's request for a stay of proceedings, but granted BLNR's alternative request for a decision on appeal.  In rendering its decision, the environmental court took judicial notice of Mauna Kea Anaina Hou, and concluded

12

that "Flores was denied the right to a contested case hearing on the subject Consent to Sublease in violation of his constitutional right to a hearing under Article 12, Section 7 of the Hawaiʻi Constitution and Mauna Kea Anaina Hou, and specifically section IV of the concurring opinion therein."

Accordingly, the Order vacated the environmental court's April 5, 2016 order remanding the case to BLNR, vacated the Consent, and remanded the case to BLNR for further proceedings consistent with the Order. Final judgment was entered on January 6, 2017.

C. **Secondary Appeal and Transfer to this Court**

On February 3, 2017, BLNR timely appealed the environmental court's final judgment and Order. The University filed its cross-appeal from the environmental court's final judgment and Order on February 21, 2017. The case was transferred to this court on June 5, 2017.

D. **Subsequent Administrative Proceedings**

While Flores's case on secondary appeal was pending, a second contested case hearing was held on whether BLNR should issue the CDUP that would authorize the construction of the TMT project. The parties do not appear to dispute that Flores participated in this contested case hearing by presenting

13

evidence, including a copy of the Sublease,[4] and arguments regarding how the TMT's construction would affect Flores's interest in participating in traditional Native Hawaiian cultural practices on Mauna Kea.

## III.   STANDARDS OF REVIEW

## A.   Administrative Agency Decisions - Secondary Appeals

> Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal.  The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) [1993] to the agency's decision.

Paul's Elec. Serv., Inc. v. Befitel, 104 Hawaiʻi 412, 416, 91 P.3d 494, 498 (2004) (brackets in original) (quoting Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan, 87 Hawaiʻi 217, 229, 953 P.2d 1315, 1327 (1998)).

> HRS § 91-14(g) (2012) provides:
>
> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>> (1)   In violation of constitutional or statutory provisions; or
>> (2)   In excess of the statutory authority or jurisdiction of the agency; or
>> (3)   Made upon unlawful procedure; or
>> (4)   Affected by other error of law; or
>> (5)   Clearly erroneous in view of the reliable,

---

[4]   At oral argument, Flores acknowledged that he submitted a copy of the Sublease as an exhibit at this contested case hearing.  Oral Argument at 27:34-27:39, Flores v. Bd. of Land & Nat. Res., SCAP-17-0000059, http://oaoa.hawaii.gov/jud/oa/18/SCOA_031518_SCAP_17_59.mp3.

> probative, and substantial evidence on the whole record; or
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"[U]nder HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." Paul's Elec. Serv., Inc., 104 Hawaiʻi at 416, 91 P.3d at 498 (brackets in original) (quoting In re Hawaiian Elec. Co., 81 Hawaiʻi 459, 465, 918 P.2d 561, 567 (1996)).

## IV.  DISCUSSION

BLNR and the University contend that the environmental court erred in ruling that Flores was entitled to a contested case hearing concerning BLNR's consent to the Sublease.  In support of this position, they advance two arguments:  (1) HRS Chapter 91 does not apply in this case pursuant to this court's decisions in Sharma v. State, 66 Haw. 632, 673 P.2d 1030 (1983), and Big Island Small Ranchers Association v. State, 60 Haw. 228, 588 P.2d 430 (1978); and (2) assuming that HRS Chapter 91 applies, Flores has not demonstrated that a contested case hearing was required by law.

We address each argument separately and in turn below.

15

**A.    Sharma and Big Island Small Ranchers do not render HRS Chapter 91 inapplicable in the present case.**

Relying on Sharma and Big Island Small Ranchers, BLNR and the University contend that when BLNR takes action in relation to a lease as a landlord, BLNR is engaged in the custodial management of public property, which is a matter of internal agency management.  Hence, BLNR and the University assert that because this court has recognized that agencies do not need to comply with HRS Chapter 91 when dealing with matters of internal agency management, BLNR was not required to hold a contested case hearing within the meaning of HRS § 91-1[5] before consenting to the Sublease.

Flores counters that BLNR and the University read Sharma and Big Island Small Ranchers too broadly.  Flores contends that in these cases, this court did not "hold that whenever the BLNR makes a decision that affects the administration and control of public lands that no one has the right to a contested case hearing."

We agree with Flores that BLNR and the University read

---

[5]    HRS § 91-1(5) (2012) defines a "contested case" as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing."  Under HRS § 91-1(6) (2012), an "agency hearing" is a "hearing held by an agency immediately prior to judicial review of a contested case as provided in section 91-14."  HRS §§ 91-9 through 91-12 delineate the procedural requirements that apply in the context of a contested case hearing held by an administrative agency.

16

Sharma and Big Island Small Ranchers too broadly. In neither case did this court announce the principle that whenever BLNR acts in relation to a lease as a landlord pursuant to HRS Chapter 171, BLNR's actions per se constitute the custodial management of public property and relate to matters of internal agency management, such that HRS Chapter 91 does not apply.

In Sharma, BLNR leased a tract of government land to Sharma for a term of twenty-nine years. 66 Haw. at 634, 673 P.2d at 1032. Under the lease, Sharma was required to, inter alia, obtain and maintain a comprehensive public liability insurance policy, and to post an appropriate performance bond. Id. While Sharma obtained a sufficient insurance policy, Sharma did not post the performance bond required under the lease. Id.

BLNR overlooked the issue until Sharma sought BLNR's approval to subdivide and sublease a portion of the land. Id. In reviewing Sharma's lease while processing his request, BLNR discovered that his insurance policy had lapsed, and that Sharma still had not posted the bond required under the lease. Id. Approximately sixty days after Sharma was served notice of his default on the lease, but failed to take corrective action, BLNR terminated Sharma's lease. Id. at 634-35, 673 P.2d at 1032. The land was repossessed and the lease was resold by way of public auction. Id., 673 P.2d at 1033.

17

Sharma brought suit against BLNR, arguing, inter alia, that he had been denied due process because BLNR did not hold a contested case hearing prior to terminating his lease. Id. at 635-36, 673 P.2d at 1033. The trial court granted summary judgment in favor of BLNR, determining that BLNR's cancellation of Sharma's lease was valid. Id. at 636, 673 P.2d at 1033.

On appeal, this court considered whether HRS Chapter 91 applied when BLNR "acts to cancel a lease agreement covering a tract of public land." Id. The Sharma court first observed that HRS Chapter 91 "does not bind an agency in all of its actions or functions." Id. This court explained that while HRS Chapter 91's procedures attach when administrative agencies engage in rulemaking or adjudication, administrative agencies also perform other actions that are not subject to the panoply of procedures outlined in HRS Chapter 91. Id. at 637, 673 P.2d at 1033-34. To illustrate this principle, this court discussed how it has previously acknowledged that agencies must also "deal with matters related to its internal management," id., 673 P.2d at 1034, which "necessarily includes the custodial management of public property entrusted to the agency," id. at 638, 673 P.2d at 1034 (quoting Holdman v. Olim, 59 Haw. 346, 355, 581 P.2d 1164, 1170 (1978)), and that "where no 'private rights of or procedures available to the public' are affected, decisions on these matters

18

are not subject to [HRS Chapter 91's] restraints on the agency's rulemaking power." Id. at 637, 673 P.2d at 1034 (quoting HRS § 91-1(4) (1976)).

After establishing that a contested case hearing is not required whenever an individual is adversely affected by an agency action, this court concluded that BLNR was not required to hold a contested case hearing before terminating Sharma's lease because, on the facts before it, a contested case hearing was not required by law. Id. at 639-41, 673 P.2d at 1035-36. The Sharma court first looked to "the statutory provisions governing the leasing of public land, HRS Chapter 171, to determine whether the Board was obligated thereunder to afford Sharma an opportunity for agency hearing before cancelling his lease." Id. at 639, 673 P.2d at 1035. On this point, this court concluded that a contested case hearing was not required under statute because HRS § 171-39 expressly empowered BLNR to "'terminate the lease or tenancy and take possession of the leased land, without demand or previous entry and without legal process' after the notice of a breach is delivered," id. at 640, 673 P.2d at 1035 (quoting HRS § 171-39), and did not suggest "that a hearing must be conducted" before BLNR may terminate a lease of public land. Id.

Next, the Sharma court held that a contested case hearing was not required by constitutional due process. Id. at

19

641, 673 P.2d at 1036. This court noted that the lease was valid and binding upon Sharma, and that Sharma "was afforded ample opportunity to demonstrate to the trial court that he was not actually in default or that the State had breached the agreement." Id. Therefore, this court held that "[n]o due process violation appears in the record." Id.

Put succinctly, the Sharma court's analysis proceeded in three steps. First, this court reaffirmed that HRS Chapter 91 procedures are not universally required in all circumstances where an individual is negatively impacted by an agency action. Sharma, 66 Haw. at 636, 673 P.2d at 1033. The Sharma court referred to previous decisions demonstrating that this principle has been recognized and applied in the past, in cases where this court held that an agency is not required to follow HRS Chapter 91's rulemaking procedures when engaged in internal management matters by way of the custodial management of public property. Id. at 637-38, 673 P.2d at 1033-34. Second, this court determined that BLNR was not required to hold a contested case hearing before terminating Sharma's lease because HRS § 171-39 did not require BLNR to do so. Id. at 639-640, 673 P.2d at 1035-36. Lastly, the Sharma court held that a contested case hearing was not required by due process because the lease was valid and enforceable, and because Sharma had received sufficient notice

20

and was afforded an adequate opportunity to be heard on whether he had complied with the lease. Id. at 641, 673 P.2d at 1036.

The foregoing illustrates that BLNR and the University's arguments premised upon Sharma are without merit for two reasons. First, this court did not, as BLNR and the University contend, announce a general rule providing that whenever BLNR acts in relation to a lease as a landlord, such actions fall outside the purview of HRS Chapter 91 because they constitute the custodial management of public property and relate to matters of internal agency management. Second, the University and BLNR incorrectly assert that this court held that Sharma was not entitled to a contested case hearing because BLNR engaged in the custodial management of public property by terminating his lease. Rather, the Sharma court held that BLNR did not have to hold a contested case before terminating Sharma's lease because such a hearing was not required by statute or due process.

Likewise, Big Island Small Ranchers does not support BLNR's and the University's contention that HRS Chapter 91 does not apply in this case. In that case, BLNR decided to auction leases of certain parcels and lots of public land to qualified bidders. Big Island Small Ranchers, 60 Haw. at 229, 588 P.2d at 433. Before the auction was held, the appellants filed a lawsuit against BLNR, arguing, inter alia, that BLNR's authorization of

21

the public auction was null and void because BLNR engaged in "rulemaking" when it took such action, but failed to comply with the formal rulemaking procedures prescribed in HRS Chapter 91. Id. at 230, 588 P.2d at 433.  BLNR filed a motion to dismiss the complaint or, alternatively, for summary judgment.  Id. at 231-32, 588 P.2d at 434.  The circuit court dismissed the complaint and entered judgment in favor of BLNR.  Id. at 233-34, 588 P.2d at 435.  On appeal, this court affirmed, holding that BLNR was not required to comply with the rulemaking requirements in HRS Chapter 91 because "the conduct of the State in this case comes within the 'custodial management of . . . property' exception to Chapter 91."  Id. at 239, 588 P.2d at 438 (alteration in original) (quoting HRS § 91-1(4)).

BLNR and the University's reliance upon Big Island Small Ranchers is misplaced for two reasons.  First, Big Island Small Ranchers is distinguishable from the present case insofar as there, the appellants specifically argued that BLNR, in deciding to auction the leases for the parcels of public land, had improperly engaged in rulemaking without complying with the requisite procedures under HRS Chapter 91.  By contrast, here, Flores does not argue that BLNR engaged in rulemaking when it consented to the Sublease, such that BLNR was required to comply with the procedures related to rulemaking in HRS Chapter 91.

22

Second, BLNR and the University construe the holding in Big Island Small Ranchers too broadly.  In that case, this court did not hold that whenever BLNR acts as a landlord in matters relating to leases of public lands, such actions categorically qualify as the custodial management of public property, and therefore, constitute matters of internal agency management, which fall outside the scope of HRS Chapter 91.  Rather, this court rejected the appellants' argument that BLNR had engaged in rulemaking and was thus required to comply with HRS Chapter 91's rulemaking procedures, based on its conclusion that BLNR's auctioning of leases for public lands amounted to the custodial management of public property.

Therefore, we conclude BLNR and the University's arguments based upon Sharma and Big Island Small Ranchers are unavailing.  These cases do not establish that BLNR's actions in this case fall outside the scope of HRS Chapter 91.  Accordingly, we consider whether BLNR was required to hold a contested case hearing under HRS Chapter 91 before consenting to the Sublease.

**B.  A contested case hearing was not required by law.**

An administrative agency must hold a contested case hearing when such a hearing is required by law.  See HRS § 91-1(5) (2012); In re Maui Elec. Co., 141 Hawaiʻi 249, 258, 408 P.3d 1, 10 (2017).  A contested case hearing is required by law when

23

it is required by: (1) statute; (2) administrative rule; or (3) constitutional due process. <u>Mauna Kea Anaina Hou</u>, 136 Hawaiʻi at 390, 363 P.3d at 238.

### 1. A contested case hearing was not required by statute.

BLNR and the University argue that a contested case hearing was not required by statute because HRS § 171-36(a)(6), which governs BLNR's authority to consent to a sublease, does not require such a hearing. HRS § 171-36(a)(6) (2011) establishes the restrictions that apply to subleases of public lands, and states:

> (6) The lessee shall not sublet the whole or any part of the demised premises except with the approval of the board; provided that prior to the approval, the board shall have the right to review and approve the rent to be charged to the sublessee; provided further that in the case where the lessee is required to pay rent based on a percentage of its gross receipts, the receipts of the sublessee shall be included as part of the lessee's gross receipts; provided further that the board shall have the right to review and, if necessary, revise the rent of the demised premises based upon the rental rate charged to the sublessee including the percentage rent, if applicable, and provided that the rent may not be revised downward[.]

In other words, HRS § 171-36(a)(6) provides that a sublease of public lands is not valid unless BLNR approves of it. In deciding whether to consent to a sublease, BLNR may review and approve the rent that will be charged under the sublease, and may review and raise the rent on the primary lease based upon the rent to be charged under the sublease. HRS § 171-36(a)(6).

24

However, HRS § 171-36(a)(6) does not contain any language that states or otherwise suggests that BLNR must hold a contested case hearing before consenting to a sublease.  See HRS § 171-36(a)(6).  Thus, we hold that a contested case hearing was not mandated by statute in this case.  See In re ʻĪao Ground Water Mgmt. Area High-Level Source Water Use Permit Applications, 128 Hawaiʻi 228, 239, 287 P.3d 129, 140 (2012) [hereinafter In re ʻĪao] (determining that a hearing was not required before the Commission on Water Resource Management could establish an Interim Instream Flow Standard (IIFS) because "nothing in [the governing statute, HRS § 174C-71,] requires the Commission to hold a hearing before establishing or amending an IIFS").

2.  **A contested case hearing was not required by administrative rule**.

Although BLNR does not advance any arguments on this point, the University argues that a contested case hearing was not required by administrative rule.  The University asserts that "there is nothing in the [Department of Land and Natural Resources (DLNR)] Rules, [Hawaiʻi Administrative Rules (HAR)] Title 13, that requires a public hearing for a consent to a sublease."  The University also notes that while several provisions of HAR Title 13 require BLNR to hold a hearing before taking other actions, "[t]here is no similar requirement for a

25

hearing in relation to the BLNR's consent to a sublease."  Thus, the University concludes that there was no rule-based mandate requiring BLNR to hold a contested case hearing before consenting to the Sublease.

HAR Title 13 "governs practice and procedure before the board of land and natural resources of the State of Hawaii under chapter 91, Hawaii Revised Statutes (HRS), the public land laws of the State and such other related acts as may now or hereafter be administered by the board."  HAR § 13-1-1 (2009).  The University correctly observes that a few subsections in HAR Title 13 expressly require BLNR to hold a contested case hearing in specific circumstances.  For example, HAR § 13-184-11(1) requires BLNR to conduct a contested case hearing in matters concerning geothermal developmental activities within a geothermal resource subzone.  HAR § 13-184-11(1) (2009) states:

> (1)    The use of an area for geothermal development activities within a geothermal resource subzone shall be governed by the board, if such activities lie within a conservation use district.  <u>If geothermal development activities are proposed within a conservation district, then, after receipt of a properly filed and completed application, the board shall conduct a public hearing and, upon appropriate request, a contested case hearing pursuant to chapter 91, Hawaii Revised Statutes, to determine whether, pursuant to board regulations, a conservation district use permit shall be granted to authorize the geothermal development activities described in the application</u>.

(Emphasis added.)  Similarly, HAR § 13-300-38, which governs determinations regarding the appropriate treatment of a

previously identified Native Hawaiian burial site, provides that when a determination is made, BLNR must notify the applicant in writing "[t]hat an applicant who disagrees with the determination has the option to request reconsideration or appeal the decision as a contested case[.]" HAR § 13-300-38(b)(2).

Thus, HAR §§ 13-184-11(1) and 13-300-38 illustrate that some subsections of HAR Title 13 contain language that explicitly requires BLNR to hold a contested case in certain circumstances, or entitles an aggrieved individual to a contested case hearing upon appropriate request. However, HAR Title 13 does not contain any provisions relating to BLNR's authority to consent to a sublease of public lands, or the matter of whether BLNR is required to conduct a contested case hearing prior to consenting to a sublease. Therefore, we conclude "there is no rule-based requirement to hold a [contested case] hearing" in the case at bar. In re ʻĪao, 128 Hawaiʻi at 239, 287 P.3d at 140.

### 3. A contested case hearing was not required by constitutional due process.

This court has set forth a two-step analysis for determining whether a person has a constitutional right to a hearing. Sandy Beach Def. Fund, 70 Hawaiʻi at 376, 773 P.2d at 260. First, this court considers whether "the particular interest which claimant seeks to protect by a hearing [is]

27

'property' within the meaning of the due process clauses of the federal and state constitutions." Id. Second, if this court concludes that the interest is "property," this court analyzes "what specific procedures are required to protect it." Id.

Therefore, in order to determine whether Flores was entitled to a contested case hearing by constitutional due process, the following issues must be resolved: (1) whether Flores sought to protect an interest which qualifies as "property" in a constitutional sense, and (2) if so, whether a contested case hearing was required to protect such an interest.

### a. Constitutionally Cognizable Property Interest

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Sandy Beach Def. Fund, 70 Haw. at 377, 773 P.2d at 260 (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)).

Additionally, this court has explained that:

> The legitimate claims of entitlement that constitute property interests are not created by the due process clause itself. Instead, "they are created and their dimensions are defined by existing rules or understanding[s] that stem from an independent source such as state law--rules or understanding[s] that secure certain benefits and that support claims of entitlement to those benefits."

In re Maui Elec. Co., 141 Hawai'i at 260, 408 P.3d at 12 (quoting

28

In re ʻĪao, 128 Hawaiʻi at 241, 287 P.3d at 142).

On secondary appeal, Flores primarily argues that he has a property interest in engaging in traditional Native Hawaiian cultural practices on Mauna Kea, which is expressly protected by article XII, section 7 of the Hawaiʻi Constitution.

Article XII, section 7 provides:

> The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupuaʻa tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights.

In Mauna Kea Anaina Hou, this court effectively recognized that the interest of Native Hawaiians in pursing their traditional and customary cultural practices on Mauna Kea constitutes a property interest for the purposes of triggering due process protections. At issue in Mauna Kea Anaina Hou was whether BLNR violated the appellants' due process rights by issuing a CDUP authorizing the TMT's construction before holding a contested case hearing on the matter. 136 Hawaiʻi at 390, 363 P.3d at 238.

This court first held that "a contested case hearing was required as a matter of constitutional due process." Id. The Mauna Kea Anaina Hou court acknowledged that "[t]he right to exercise Native Hawaiian customs and traditions is explicitly protected by article XII, section 7 of the Hawaiʻi Constitution,"

29

and that the appellants argued that the TMT project would significantly impair their ability to engage in Native Hawaiian cultural practices on Mauna Kea. Id. Based on the foregoing, this court held:

> Given the substantial interests of Native Hawaiians in pursuing their cultural practices on Mauna Kea, the risk of an erroneous deprivation absent the protections provided by a contested case hearing, and the lack of undue burden on the government in affording Appellants a contested case hearing, a contested case hearing was "required by law" regardless of whether BLNR had voted to approve one on its own motion at the February 25, 2011 meeting.

Id. (quoting Sandy Beach Def. Fund, 70 Haw. at 378, 773 P.2d at 261). Having determined that a contested case hearing was mandated by due process, the Mauna Kea Anaina Hou court ultimately concluded that BLNR violated the appellants' right to due process by granting the CDUP prior to holding a contested case hearing. Id. at 239, 363 P.3d at 239.

Put differently, in Mauna Kea Anaina Hou, this court applied the two-step framework articulated in Sandy Beach Defense Fund to ascertain whether BLNR was required to hold a contested case hearing before granting the CDUP. This court first analyzed whether the appellants sought to protect an interest that rose to the level of "property," and then considered whether a contested case hearing was required to adequately protect that interest. See Mauna Kea Anaina Hou, 136 Hawaiʻi at 390, 363 P.3d at 238; Sandy Beach Def. Fund, 70 Haw. at 376-78, 773 P.2d at 260-61. In

30

engaging in the foregoing analysis, this court effectively
determined that the appellants' interest in engaging in Native
Hawaiian cultural practices on Mauna Kea qualified as "property"
in the constitutional sense, due to the fact that the right to
engage in such practices is expressly guaranteed by article XII,
section 7 of the Hawaiʻi Constitution.  See Mauna Kea Anaina Hou,
136 Hawaiʻi at 390, 363 P.3d at 238.

Akin to the appellants in Mauna Kea Anaina Hou, here,
Flores seeks to protect his interest in engaging in traditional
Native Hawaiian cultural practices on Mauna Kea.  Consequently,
pursuant to article XII, section 7 of the Hawaiʻi Constitution,
as interpreted by this court in Mauna Kea Anaina Hou, we conclude
that Flores has shown that he seeks to protect a constitutionally
cognizable property interest in this case.

**b.    Whether a Contested Case Hearing was Required**

Having determined that Flores has a property interest
in engaging in traditional Native Hawaiian cultural practices on
Mauna Kea, we consider whether a contested case hearing was
required to protect this interest.  When determining the specific
procedures required to comply with constitutional due process, we
consider and balance three factors:  "(1) the private interest
which will be affected; (2) the risk of an erroneous deprivation
of such interest through the procedures actually used, and the

probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail." Sandy Beach Def. Fund, 70 Haw. at 378, 773 P.2d at 261.

Regarding the first factor, Flores asserts that the private interest that is affected by the Consent and the Sublease is his interest in engaging in traditional Native Hawaiian cultural practices on Mauna Kea. See section IV.B.3.a, supra. This court has previously recognized that this interest is "substantial," as it is guaranteed by article XII, section 7 of the Hawaiʻi Constitution. Mauna Kea Anaina Hou, 136 Hawaiʻi at 390, 363 P.3d at 238.

With respect to the second factor, we acknowledge that, as an initial matter, the parties largely dispute the extent to which the Sublease and the Consent adversely affected Flores's interest in engaging in Native Hawaiian cultural practices on Mauna Kea, and whether there was a risk of erroneous deprivation on the basis that the Sublease and the Consent had no bearing upon this interest. However, assuming arguendo that the Sublease and the Consent had an impact on Flores's interest under the specific circumstances of this case, we believe that there is no risk of erroneous deprivation, because Flores has already been afforded a full opportunity to participate in a contested case

hearing and express his views and concerns on the matter, and he has not persuaded us that the provision of an additional contested case hearing is necessary to adequately safeguard against erroneous deprivation in this case.

The parties do not dispute that Flores participated extensively in the separate contested case hearing on the issuance of the CDUP that would authorize the TMT's construction by presenting evidence, including a copy of the Sublease,[6] and arguments concerning the effect that the TMT's construction will have on his right to participate in traditional Native Hawaiian cultural practices on Mauna Kea. In this case, it appears that Flores seeks a distinct contested case hearing on the Consent in order to express the same concerns, and to vindicate the same interests, that he previously raised in the contested case hearing on the CDUP. Moreover, Flores does not clarify the extent to which, if BLNR held a contested case hearing on the Consent, he would put forth evidence and arguments materially different from that which he already proffered at the CDUP contested case hearing.[7] On this particular record, we are not

---

[6] See note 4, supra.

[7] Additionally, because the Sublease provides that TIO "shall use the Subleased Premises solely to construct and operate the TMT Facilities" and specifies that "[t]he construction and operation of the Subleased Premises shall be conducted in strict compliance with the terms and conditions of [the CDUP] . . . and any amended or subsequent [CDUP]," the potential impact of the
(continued...)

33

convinced that an <u>additional</u> contested case hearing would offer any probable value in protecting against the erroneous deprivation of his interest in engaging in traditional Native Hawaiian cultural practices on Mauna Kea.

Considering the third <u>Sandy Beach</u> factor in light of the foregoing, it appears that BLNR has a strong interest in not having to hold a separate contested case hearing in this case. Put simply, to mandate BLNR to hold a full contested case hearing on whether it should consent to the Sublease would require BLNR to bear the duplicative administrative burden of providing procedural protections that would be of no additional value in safeguarding Flores's interest in engaging in traditional Native Hawaiian cultural practices on Mauna Kea. <u>See</u> <u>Briggs v. Sullivan</u>, 954 F.2d 534, 539-40 (9th Cir. 1992) (determining that, in applying the federal equivalent of the <u>Sandy Beach Defense Fund</u> balancing test, plaintiffs were not entitled to more detailed, thorough procedures because the government had a significant interest in not having to bear the substantial fiscal and administrative burdens of administering the enhanced procedures when such procedures would not substantially improve the risk of erroneous deprivation).

---

[7](...continued)
Sublease on Flores's asserted interests would appear to overlap entirely with the potential impact of the CDUP.

In sum, Flores seeks to protect an interest that this court has previously recognized as substantial--his interest in participating in traditional Native Hawaiian cultural practices on Mauna Kea.  Even assuming arguendo that the Sublease and Consent would impact this interest under the specific circumstances of this case, we believe that there is no risk of its erroneous deprivation absent an additional contested case hearing, because the record demonstrates that Flores has already participated in the separate contested case hearing on the CDUP, and was thereby afforded a full and fair opportunity to express his views and concerns as to the effect that the Sublease, the Consent, and the TMT's construction would have on his interest in engaging in traditional Native Hawaiian cultural practices on Mauna Kea.  To require BLNR to hold another contested case hearing in such circumstances would require BLNR to shoulder duplicative administrative burdens and comply with additional procedural requirements that would offer no further protective value.  Based upon the foregoing consideration of the three Sandy Beach Defense Fund factors and the record currently before us, we hold that BLNR did not violate Flores's constitutional right to due process by denying his request for a contested case hearing in the present case.

To conclude, we hold that Flores was not entitled to a

contested case hearing regarding whether BLNR should consent to the Sublease because, on the record in this case, such a hearing was not required by statute, administrative rule, or due process. Accordingly, the environmental court erred in ruling that "Flores was denied the right to a contested case hearing on the subject Consent to Sublease in violation of his constitutional right to a hearing under Article 12, Section 7 of the Hawaiʻi State Constitution and Mauna Kea Anaina Hou, and specifically section IV of the concurring opinion therein."

## V.  CONCLUSION

For the reasons stated above, we reverse the environmental court's January 6, 2017 Final Judgment and "Order Granting In Part and Denying In Part Appellees State of Hawaiʻi, Board of Land and Natural Resources, Department of Land and Natural Resources, and Chairperson Suzanne D. Case's Motion for Stay of Proceedings, or in the Alternative for the Court to Issue its Decision on Appeal, Filed October 25, 2016; Vacating Consent to Sublease and Non-Exclusive Easement Agreement Between TMT International Observatory LLC and the University of Hawaii Under

36

General Lease No. S-4191; and Remanding Matter to the Board of

Land and Natural Resources."

Clyde J. Wadsworth and Kalikoʻonalani D. Fernandes, (Kimberly Tsumoto Guidry, William. J. Wynhoff, Julie China and David D. Day, with them on the briefs) for Appellees-Appellants/Cross-Appellees State of Hawaiʻi, Board of Land and Natural Resources, Department of Land and Natural Resources, and Chairperson Suzanne D. Case

David Kauila Kopper and Camille Kaimālie Kalama for Appellant-Appellee E. Kalani Flores

John P. Manaut and Ian L. Sandison (Arsima A. Muller with them on the briefs) for Appellee-Appellee/Cross-Appellant University of Hawaiʻi

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

