**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-24-0000598**
**12-MAY-2026**
**07:48 AM**
**Dkt. 50 SO**

NO. CAAP-24-0000598

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

HENRY Y. YANG, M.D., Complainant-Appellant-Appellant
v.
KENNETH S. FINK, M.D., Director of the Department of Health,
State of Hawaiʻi, Respondent-Appellee-Appellee,
and
HAWAIʻI LABOR RELATIONS BOARD, State of Hawaiʻi,
Agency-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3CC191000208)

### SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, Leonard and Hiraoka, JJ.)

Henry Y. **Yang**, M.D. appeals from the *Final Judgment* for
the Hawaiʻi Department of Health and its director, Kenneth S.
Fink, M.D.[1] (together, **DOH**) entered by the Circuit Court of the
Third Circuit.[2]  The Final Judgment affirmed an order by the
Hawaiʻi Labor Relations Board (**HLRB**) dismissing Yang's prohibited
practice complaint against DOH.  We affirm.

Yang submitted a declaration to the HLRB stating these
facts:  He is a psychiatrist.  DOH hired him as a half-time
clinical psychiatrist in May 2008.  He and another DOH half-time

---

[1]     Kenneth S. Fink, M.D., the current director of the Department of
Health, is substituted for former director Bruce Anderson, Ph.D., under
Rule 43(c)(1) of the Hawaiʻi Rules of Appellate Procedure.

[2]     The Honorable Wendy M. DeWeese presided.

clinical psychiatrist each worked forty hours every other week. In March 2009 DOH and the Hawaii Government Employees Association (**HGEA**) agreed to include him as an exempt employee in Bargaining Unit 13.

In January 2011 Yang and his colleague agreed it would be in their patients' best interest for them to work every week, twenty hours each. On February 7, 2011 DOH required him to return to working forty hours every other week. He sent a letter reminding DOH it had approved of his twenty-hours per week schedule. On May 2, 2011, DOH threatened him with termination if he didn't return to working forty hours every other week.

DOH terminated his employment on May 31, 2011. He met with HGEA's Unit 13 business agent that day. The business agent said she hadn't heard about Yang's situation.

The record contains a letter from Yang to DOH dated May 31, 2011, stating: "I am placing you on notice that I do not waive any and all collective bargaining agreement remedies and any remedies provided by law[.]"

Yang's declaration continues: On July 1, 2011, he met with representatives of DOH and the Hilo Medical Center. He was told that DOH was transferring responsibility for clinical psychiatric care to Hilo Medical Center.

On November 25, 2011, Yang filed a prohibited practice complaint against DOH with the HLRB. DOH moved to dismiss the complaint. The HLRB heard arguments on the motion on January 19, 2012.

Nothing happened for seven years. Then, on May 8, 2019, the HLRB issued a **Proposed Order** granting DOH's motion to dismiss. Yang submitted exceptions. The HLRB heard arguments on the exceptions. On July 2, 2019, the HLRB issued its *Final Order Adopting Proposed Order Granting Respondent's Motion to Dismiss Prohibited Practice Complaint*.

Yang appealed the Final Order to the circuit court under Hawaii Revised Statutes (**HRS**) § 91-14. The circuit court entered findings of fact, conclusions of law, and an order

affirming the HLRB.[3]  The Final Judgment was entered on August 21, 2024.  This appeal followed.

Yang contends the circuit court erred by **(1)** applying the wrong standards of review and **(2)** violating his constitutional right to due process.  This is a secondary appeal under the Hawaiʻi Administrative Procedure Act, HRS § 91-15.[4] The opening brief's statement of the points of error and argument focus on error Yang contends was made by the circuit court.  But in a secondary appeal under HRS § 91-15, we apply the standards of HRS § 91-14(g) (Supp. 2023) to the *agency's* decision, based on the record before the agency — the certified record on appeal transmitted by the agency to the circuit court under HRS § 91-14(d).  Mālama Kakanilua v. Bd. of Land & Nat. Res., 155 Hawaiʻi 512, 516, 567 P.3d 217, 221 (App. 2025) (citing Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 120, 424 P.3d 469, 475 (2018)).

Like a circuit or environmental court in a primary appeal, we review the agency's findings of fact under the *clearly erroneous* standard, and the agency's conclusions of law *de novo*. Sierra Club v. D.R. Horton-Schuler Homes, LLC, 136 Hawaiʻi 505, 516, 364 P.3d 213, 224 (2015).  Then, under HRS § 91-14(g), we may affirm the decision of the agency; remand the case with instructions for further proceedings; or reverse or modify the decision and order if the substantial rights of the appellant may have been prejudiced because the agency's findings, conclusions, decisions, or orders: (1) violate provisions of the constitution or a statute, (2) are beyond the agency's statutory authority or jurisdiction, (3) used unlawful procedure, (4) were affected by

---

[3]     When deciding an administrative agency appeal under HRS § 91-14, a circuit court functions as an appellate court.  It should not make its own findings of fact, or consider the weight of the evidence presented to, or the credibility of witnesses who testified before, the agency.  Sierra Club v. D.R. Horton-Schuler Homes, LLC, 136 Hawaiʻi 505, 515-16, 522, 364 P.3d 213, 223-24, 230 (2015).  It reviews the agency's findings of fact for *clear error*, and the agency's conclusions of law *de novo*.  Id. at 516, 364 P.3d at 224.

[4]     HRS § 91-15 (Supp. 2023) provides:

> Review of any final judgment of the circuit court or, if applicable, the environmental court, under this chapter shall be governed by chapter 602.

other error of law, (5) were clearly erroneous, or (6) were arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.  Cadiz v. QSI, Inc., 148 Hawaiʻi 96, 106-07, 468 P.3d 110, 120-21 (2020).

We have liberally construed Yang's arguments to challenge the HLRB's procedure, findings, and conclusions.

**(1)**  Yang's prohibited practice complaint was time-barred.  HRS § 377-9 (1993) provided:

> (a)   Any controversy concerning unfair labor practices may be submitted to the [HLRB] in the manner and with the effect provided in this chapter, but nothing herein shall prevent the pursuit of relief in courts of competent jurisdiction.
>
> . . . .
>
> (l)   No complaints of any specific unfair labor practice shall be considered unless filed within ninety days of its occurrence.

The HLRB Final Order adopted the findings of fact and conclusions of law in its proposed order.  The HLRB accurately summarized the allegations in Yang's complaint and quoted his six causes of action and eleven paragraphs of his factual allegations, which the HLRB deemed as true to decide DOH's motion to dismiss.  The factual allegations included:

> 11   On or about May 31[,] 2011[,] [DOH] terminated [Yang.]
>
> 12   On or about July 1[,] 2011[,] [DOH] with [Yang] present held a meeting with representatives of the Hilo Medical Center and stated that [DOH] was terminating their legal and medical responsibility for any and all patients that were receiving treatment and transferring them to the Hilo Medical Center[.]  ***[DOH] terminated its program for treatment and care for its patients***[.]
>
> . . . .
>
> 17   On or about September 12[,] 2011[,] the Hilo Medical Center ***confirmed*** that the duties historically and customarily performed by civil servants by [sic] the State of Hawaii had been transferred to the Hilo Medical Center and the Medical Center would begin [to] define its duties[.]

(Emphasis added.)

Yang's complaint and declaration were consistent about when he was terminated and when DOH told him his patients' care was being transferred to Hilo Medical Center.  He knew, by

July 1, 2011, that his employment by DOH had been terminated and care for his former patients had been transferred. The 90-day deadline for him to file a prohibited practice complaint with the HLRB under HRS § 377-9(l) was September 29, 2011. His complaint was not filed until November 25, 2011.[5] His claims were time-barred as a matter of law.

Yang argues that his complaint was timely because the "unequivocal, final adverse decision in [his] case occurred on September 12, 2011, when he was first informed that [DOH] was now 'privatizing' his former position." The HLRB found that "the September 12[,] 2011 notification from Hilo Medical Center did not provide new information but confirmed what [Yang] already knew from the meeting on July 1[,] 2011[,] namely that his position had been privatized and would not be handled by civil servants[.]" That finding was supported by substantial evidence in the record — Yang's declaration, which stated:

> 14    On or about July 1[,] 2011[,] the State of Hawaii Department of Health with myself present held a meeting with representatives of the Hilo Medical center and stated that the State of Hawaii Department of Health was **terminating their legal and medical responsibility** for any and all patients that were receiving treatment and **transferring them** to the Hilo Medical Center.

(Emphasis added.)

The HLRB concluded "that a formal confirmation of what [Yang] already knew does not represent the moment that he knew or should have known of [DOH's] actions[.]" The HLRB was right. Ass'n of Apartment Owners of Newtown Meadows v. Venture 15, Inc., 115 Hawaiʻi 232, 277, 167 P.3d 225, 270 (2007) (stating that a claimant "need only have factual knowledge of the elements necessary for an actionable claim" for statute of limitations to begin running).

The HLRB mischaracterized its decision as a dismissal based on lack of subject matter jurisdiction. But it stated, "it is clear that [Yang] was required to file the instant complaint no later than 90 days from July 1[,] 2011[.] [Yang] did not

---

[5]    The record does not show when Yang retained counsel.

comply with this requirement and his complaint is plainly untimely[.]" This mixed finding and conclusion was supported by substantial evidence in the record, was not clearly erroneous, and correctly applied the law. See Cowan v. Exclusive Resorts PBL1, LLC, 156 Hawaiʻi 268, 272, 574 P.3d 288, 292 (2025) (stating that a determination of "mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case"). "[W]here the decision below is correct it must be affirmed by the appellate court even though the lower tribunal gave the wrong reason for its action." State v. Taniguchi, 72 Haw. 235, 239, 815 P.2d 24, 26 (1991).

Yang's prohibited practice complaint was time-barred. The HLRB was right to dismiss the complaint. The circuit court was right to affirm the HLRB.

**(2)** Yang was not deprived of constitutional due process. We review questions of constitutional law *de novo*, under the *right/wrong* standard. Carmichael v. Bd. of Land & Nat. Res., 150 Hawaiʻi 547, 560, 506 P.3d 211, 224 (2022).

Yang argues his rights were violated by the HLRB "unnecessarily delaying the issuance of its Final Decision." HRS § 377-9(d) (Supp. 2010) provided: "After the final hearing, the board shall promptly make and file an order or decision[.]" Here, the HLRB's Final Order was issued seven and a half years after the hearing on DOH's motion to dismiss. But HRS § 377-9(g) (1993) provided: "In any proceedings for review of a decision or order of the board, the judge shall disregard any irregularity or error unless it is made to appear affirmatively that the complaining party was prejudiced thereby."

"The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res., 136 Hawaiʻi 376, 389, 363 P.3d 224, 237 (2015). "Due process calls for such procedural protections as the particular situation demands." Id. (quotation marks omitted).

6

The record does not reveal why it took the HLRB over seven years to issue the Final Order. Nor does the record show that Yang took any action after the HLRB heard DOH's motion to dismiss to attempt to expedite its decision.

The HLRB's proposed order, incorporated by the Final Order, stated: "The current Board Chair Marcus R. Oshiro and Board Member J[.] N. Musto did not participate in the original hearing on the Motion to Dismiss. However, they have thoroughly reviewed the record in this matter, including the files, transcripts, and exhibits." The record does not reflect that the HLRB's delay prejudiced Yang, procedurally or substantively.

Yang relies on <u>Kelly v. Railroad Retirement Board</u>, 625 F.2d 486 (3d Cir. 1980), <u>Kraebel v. New York City Department of Housing Preservation & Development</u>, 959 F.2d 395 (2d Cir. 1992), and <u>White v. Mathews</u>, 434 F. Supp. 1252 (D. Conn. 1976). In each case, the entity responsible for providing benefits was also responsible for the delay. In <u>Kelly</u> it was the Railroad Retirement Board. In <u>Kraebel</u> it was the City of New York (for the SCRIE program payments). In <u>White</u> it was the Social Security Administration. Here, there is no evidence in the record that DOH was responsible for the HLRB's delay in issuing the Final Order. Under these circumstances, we conclude that Yang was not deprived of constitutional due process.

The August 21, 2024 Final Judgment affirming the HLRB's July 2, 2019 Final Order is affirmed.

DATED: Honolulu, Hawaiʻi, May 12, 2026.

On the briefs:

Ted H.S. Hong,
for Complainant-
Appellant-Appellant.

Amanda L. Donlin,
Fiamma Rago,
for Respondent-
Appellee-Appellee
Kenneth S. Fink, M.D.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge