**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-22-0000516**
**12-APR-2024**
**08:00 AM**
**Dkt. 176 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

SIERRA CLUB, Appellant-Appellee/Cross-Appellee, v.
BOARD OF LAND AND NATURAL RESOURCES, Appellee-Appellee/Cross-
Appellee; COUNTY OF MAUI, Appellee-Appellee/Cross-Appellant;
and ALEXANDER AND BALDWIN, INC. and EAST MAUI IRRIGATION
COMPANY, LLC, Appellees-Appellants/Cross-Appellees

**NO. CAAP-22-0000516**

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CCV-20-0001541)

and

SIERRA CLUB, Appellant-Appellee, v.
BOARD OF LAND AND NATURAL RESOURCES, Appellee-Appellant;
ALEXANDER AND BALDWIN, INC., EAST MAUI IRRIGATION COMPANY, LLC,
and COUNTY OF MAUI, Appellees-Appellees

**NO. CAAP-22-0000519**

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CCV-20-0001541)

APRIL 12, 2024

LEONARD, ACTING CHIEF JUDGE, AND HIRAOKA, J.,
WITH NAKASONE, J., DISSENTING

OPINION OF THE COURT BY HIRAOKA, J.

In 2000 the Hawaiʻi Board of Land and Natural Resources (**BLNR**) issued four **Permits** to Alexander & Baldwin, Inc. (**A&B**) and its subsidiary, East Maui Irrigation Company, LLC (**EMI**).  The Permits let A&B and EMI divert water from streams in East Maui to Central and Upcountry Maui.  Each permit was valid for one year.  BLNR has continued the Permits annually, while a contested case on A&B and EMI's application for a 30-year water lease is pending.  BLNR considered renewing the Permits for 2021 during a public meeting on November 13, 2020.  The **Sierra Club** requested a contested case hearing.  BLNR denied the request and voted to continue the Permits.

Sierra Club appealed.  The **County** of Maui (a major user of the diverted water) intervened.  The Environmental Court of the First Circuit ordered BLNR to hold a contested case hearing and reserved jurisdiction to modify the Permits.[1]  The court later reduced the amount of water A&B and EMI could divert.  The court also awarded attorneys fees and costs to Sierra Club.

BLNR, A&B, EMI, and the County filed these secondary appeals.  We hold: **(1)** the Environmental Court had jurisdiction over Sierra Club's appeal from BLNR's denial of a contested case hearing, and exceptions to the mootness doctrine applied, but it did not have jurisdiction over Sierra Club's appeal from BLNR's decision to continue the Permits; **(2)** constitutional due process

_____

[1]    The Honorable Jeffrey P. Crabtree presided.

2

did not require a contested case under the circumstances presented here; **(3)** the Environmental Court erred by modifying the conditions under which BLNR continued the Permits; and **(4)** Sierra Club was not entitled to attorneys fees or costs.

## I. BACKGROUND

For 138 years, A&B and EMI have owned and operated a ditch system that diverts surface water from East Maui to Central and Upcountry Maui for agricultural, domestic, and other uses. See Maui Tomorrow v. Bd. of Land & Nat. Res., 110 Hawaiʻi 234, 236, 131 P.3d 517, 519 (2006). A&B's and EMI's original water leases from the State of Hawaiʻi have expired. A&B and EMI applied for a 30-year water lease in 2001. BLNR granted requests by Maui Tomorrow and Nā Moku ʻAupuni ʻo Koʻolau Hui for a contested case on the long-term lease application. The County, Maui Land & Pineapple Co., Inc., and the Hawaii Farm Bureau Federation are also participating in the contested case. The contested case remains pending before BLNR.

BLNR issued the Permits to A&B and EMI in 2000. Maui Tomorrow, 110 Hawaiʻi at 236-37, 131 P.3d at 519-20. BLNR has continued the Permits annually since 2001. See Carmichael v. Bd. of Land & Nat. Res., 150 Hawaiʻi 547, 554-55, 506 P.3d 211, 218-19 (2022). The Permits engendered much litigation.[2] The

---

[2] We take judicial notice of the court files in Sierra Club v. Bd. of Land & Nat. Res., 1CC191000019, No. CAAP-22-0000063; Sierra Club v. Bd. of Land & Nat. Res., 1CCV-22-0000794, No. CAAP-24-0000082; and Sierra Club v. Bd. of Land & Nat. Res., 1CCV-22-0001506, No. CAAP-24-0000113, No. CAAP-24-0000114. See Rule 201, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (2016); Uyeda v. Schermer, 144 Hawaiʻi 163, 172, 439 P.3d 115, 124

(continued...)

continuations for 2019 and 2020 were the subject of Sierra Club v. Board of Land and Natural Resources, 1CC191000019, No. CAAP-22-0000063 (the **2019 Sierra Club Lawsuit**).  In that case, Sierra Club sued BLNR, A&B, EMI, the County, and others[3] for declaratory and injunctive relief, alleging violation of Hawaii Revised Statutes (**HRS**) Chapters 343 (Environmental Impact Statements) and 205A (Coastal Zone Management) by all defendants, and breach of public trust duties[4] by BLNR.  After a jury-waived trial, the

_____

[2]      (...continued)
(2019) ("The most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records." (citation omitted)).  However:

> a distinction must be carefully drawn between taking judicial notice of the existence of documents in the Court file as opposed to the truth of the facts asserted in those documents.  Factual allegations, conclusions, and findings, whether authored by the court, by the parties or their attorneys, or by third persons, should not be noticed to prove the truth of the matters asserted even though the material happens to be contained in court records.  A court may only take judicial notice of the truth of facts asserted in documents such as orders, judgments, and findings of fact and conclusions of law because of the principles of collateral estoppel, res judicata, and the law of the case.

Uyeda, 144 Hawaiʻi at 172, 439 P.3d at 124 (cleaned up).

We deny A&B and EMI's request that we judicially notice the truth of the findings of fact entered on April 6, 2021, in 1CC191000019, because that case is on appeal.  We also deny A&B and EMI's request that we judicially notice documents filed in proceedings before the Commission on Water Resource Management (**CWRM**); but CWRM documents contained in the record of proceedings before BLNR, and therefore in the record for these appeals, are properly before us without judicial notice.

[3]      The others are Mahi Pono, LLC, and Mahi Pono Holdings, LLC.

[4]      Article XI, section 1 of the Hawaiʻi Constitution provides:

> For the benefit of present and future generations, the State and its political subdivisions shall conserve and protect Hawaii's natural beauty and all natural resources, including land, water, air, minerals and energy sources, and shall promote the development and utilization of these resources in a manner consistent with their conservation and in furtherance of the self-sufficiency of the State.
>
> All public natural resources are held in trust by the State
>                                          (continued...)

circuit court entered a judgment against Sierra Club. Sierra Club's appeal is pending as No. CAAP-22-0000063.

These appeals concern BLNR's decisions to (1) deny Sierra Club's request for a contested case hearing on continuing the Permits for 2021, and (2) continue the Permits for 2021. They were made during BLNR's regular meeting on November 13, 2020. The published agenda for that meeting stated:

> *Meeting materials are available for public review in advance of the meeting at:*
> *http://www.dlnr.hawaii.gov/meetings*
>
> *Considering the evolving COVID-19 situation, protecting the health and welfare of the community is of utmost concern. As such, the meeting will be held remotely, with board members, staff and applicants participating via online meeting venue.*
>
> *The meeting will be livestreamed at:*
>
> *http://youtube.com/c/boardoflandandnaturalresourcesdlnr*
>
> *TESTIMONY:*
> *Interested persons can submit written testimony in advance of each meeting that will be distributed to Board Members prior to the meeting. Written testimony must be submitted no later than 24 hours prior to the meeting to ensure time for Board Members to review it. Late written testimony will be retained as part of the record, but we cannot assure Board Members will receive it with sufficient time for review prior to decision-making. Submit written testimony to blnr.testimony@hawaii.gov.*
>
> *To provide live oral/video testimony during the online meeting, email your request to blnr.testimony@hawaii.gov at least 24 hours in advance, with your name, phone number, email address, computer identification name (check your device settings), and the agenda item on which you would like to testify. Once your request has been received, you will receive an email with the Zoom link via which to testify. You will need a computer with internet access, video camera and microphone to participate. If you require access by phone only, please indicate that in your email request. Testimony will be limited to a maximum of three (3) minutes per person per agenda item.*

--------

[4]     (...continued)
        for the benefit of the people.

Article XI, section 1 of the Hawaiʻi Constitution "adopt[s] the public trust doctrine as a fundamental principle of constitutional law in Hawaiʻi." In re Water Use Permit Applications, 94 Hawaiʻi 97, 132, 9 P.3d 409, 444 (2000).

. . . .

> In some of the matters before the Board, a person may wish to request a contested case hearing. If such a request is made before the Board's decision, then the Board will consider the request first — before considering the merits of the item before it. A person who wants a contested case may also wait until the Board decides the issue, then request the contested case after the decision. It is up to you. Any request must be made in writing within ten days. If no request for contested case is made, the Board will make a decision. The Department will treat the decision as final and proceed accordingly.

Continuation of the Permits was item D-8 on the agenda. The record has over 13,000 pages of material presented to BLNR on item D-8, including staff submissions, maps, charts, reports, written testimony, a draft environmental impact statement, information from the Maui Department of Water Supply and the Commission on Water Resource Management (**CWRM**), and other resource material.

Sierra Club submitted 14 pages of written testimony containing "a summary of recommendations for improving the staff submittal followed up [by] an in-depth analysis and explanation to justify our detailed recommendations to" BLNR. Sierra Club argued that 15 changes "must be made to the proposed revocable permits if any are issued[.]" Sierra Club also provided "key facts" it felt had been omitted from the staff submittal.

Sierra Club requested a contested case hearing one day before BLNR's meeting. No written order disposing of the request appears in the record. We take judicial notice of the meeting

**Minutes**.[5]  They indicate BLNR went into executive session to consider the request.  When the public session resumed:

> Member [Chris] Yuen motioned to deny the request for the contested case.  Member [Vernon] Char seconded the motion.  Unanimous ([Suzanne] Case, Char, [Tommy] Oi, [Kaiwi] Yoon) noting Member[] [Sam] Gon recused himself and Member [Jimmy] Gomes not present.

The audio recording of the meeting doesn't contain an explanation for BLNR's decision.[6]

A Department of Land and Natural Resources (**DLNR**) Land Division employee presented the staff submittal.  CWRM representatives presented information about instream flow standards[7] and answered BLNR board members' questions about habitat, CWRM's role on streams not in use, water diversion changes to achieve interim instream flow standards (**IIFS**),[8] and water waste.  A DLNR Division of Forestry and Wildlife (**DOFAW**) representative addressed water diversion structures fostering mosquito breeding, prioritization of structures creating ponding, flora and fauna, and diversion upgrades.

---

[5]    Available at https://dlnr.hawaii.gov/wp-content/uploads/2021/01/Minutes-201113.pdf (https://perma.cc/G8NG-3VHK) (last visited on Mar. 19, 2024).

[6]    Available at https://files.hawaii.gov/dlnr/meeting/audio/Audio-LNR-201113.m4a, at 3:37:23 to 3:39:58 (permalink unavailable) (last visited on Mar. 19, 2024).

[7]    "'Instream flow standard' means a quantity or flow of water or depth of water which is required to be present at a specific location in a stream system at certain specified times of the year to protect fishery, wildlife, recreational, aesthetic, scenic, and other beneficial instream uses."  HRS § 174C-3 (2011).

[8]    "'Interim instream flow standard' means a temporary instream flow standard of immediate applicability, adopted by [CWRM] *without the necessity of a public hearing*, and terminating upon the establishment of an instream flow standard."  HRS § 174C-3 (emphasis added).

BLNR then heard public testimony. According to the Minutes, BLNR heard from:

> Randy Cabral (Hawaii Farm Bureau) in support. Jerome Kekiwi, opposed to the renewal. Caleb Rowe and Jeff Pearson, County of Maui BWS [(Board of Water Supply)], in support. Warren Watanabe (Maui County Farm Bureau), in support, Dick Mayer, would like to see conditions in place to have the [environmental impact statement] completed. Norman Franco, provided testimony for government control. Kaniloa Kamaunu, does not feel that the applicant has any rights to the water. ***David Frankel*** [(Sierra Club)] ***opposes the submittal and stands by his written testimony.*** Wayne Tanaka (OHA) [(Office of Hawaiian Affairs)] opposes. Albert Perez (Maui Today) opposes. Lucienne de Naie, (Haiku Association) would like to see more communication between Mahi Pono and the communities that are affected by the diversion of water. Phyliss Shimabukuro-Geiser (DOA) [(Hawaiʻi Department of Agriculture)] supports the submittal. David Smith DOFAW, noted that they are interested in the [watershed] and recreational aspects of the area.

(Emphasis added.)

The audio recording of the meeting contains over 18 minutes of argument by Frankel.[9] Proceedings on item D-8 lasted over three hours. BLNR then unanimously approved continuation of the Permits subject to these conditions:

1. ***Old conditions remain in effect to the extent they are consistent with new conditions.***

2. Include a representative of the Huelo Community Association to the interim discussion group first authorized in 2018.

3. [A&B and EMI] shall look into supplying the Maui Invasive Species Committee with water, and if feasible, and despite it not being an agricultural use, be considered a reasonable and beneficial and permitted use under the [Permits].

---

[9] Available at https://files.hawaii.gov/dlnr/meeting/audio/Audio-LNR-201113.m4a, at 5:13:00 to 5:31:45 (permalink unavailable) (last visited on Mar. 19, 2024).

4.  Regarding staff recommendation #5,[10] in reviewing efficiency upgrades to their system, [A&B and EMI are] to work with the Maui Fire Department to determine what their exact needs are.

5.  Statement of intent- the Board intends to deal with the question of the restoration of the non-IIFS streams and efficiency upgrades to the system no later than the time when the Board considers going out to auction with the final lease.

(Bold added.)

The "old conditions" were summarized in the DLNR staff submittal:

1.  Require the holdover of the revocable permits to incorporate the June 20, 2018 CWRM order. There shall be no out of watershed diversions from the streams listed as full restoration streams in the CWRM order, and the timing for stopping the diversions shall be in accordance with the aforesaid CWRM order.

2.  There shall be no waste of water. All water diverted shall be put to beneficial agricultural use or municipal use.

3.  Any amount of water diverted under the revocable permits shall be for reasonable and beneficial use and always in compliance with the amended interim instream flow standards (IIFS).

4.  The holdover shall comply with all conditions required by the CWRM's Amended IIFS decision.

5.  [A&B and EMI] shall provide a specific report on the progress regarding the removal of diversions and fixing of the pipe issues before the end of the holdover period.

6.  [A&B and EMI] shall cleanup trash from revocable permit areas starting with areas that are accessible and close to streams.

7.  The revocable permits shall be subject to any existing or future reservations of water for the Department of Hawaiian Home Lands (DHHL).

8.  Establish an interim committee to discuss water usage issues in the license area. The committee shall

_____

[10]  DLNR staff recommendation no. 5 was:

[A&B and EMI] shall submit to [DLNR] a plan for their proposed upgrades, including an implementation timeline, to the irrigation system intended to address CWRM's concerns no later than June 30, 2021.

9

consist of five members, representing Alexander & Baldwin, Farm Bureau, Office of Hawaiian Affairs, the Native Hawaiian Legal Corporation and the County of Maui. The interim committee shall meet once a month for the first quarter, then at least quarterly thereafter, more often as useful.

9. [A&B and EMI] shall provide quarterly written reports to the Board containing the following information:

   a. The amount of water used on monthly basis, including the monthly amount of water delivered for: the County of Maui Department of Water Supply (DWS) and the County of Maui Kula Agricultural Park; diversified agriculture; industrial and non-agricultural uses, and reservoir/fire protection/hydroelectric uses. Also, provide an estimate of the system loss for the EMI ditch system and the A&B field system. Diversified agricultural uses shall also provide information as to location, crop, and user of the water. Industrial and non-agricultural uses shall specify the character and purpose of water use and the user of the water.

   b. For each stream that is subject to the CWRM order, a status update as to the degree to which the flow of each stream has been restored, and which artificial structures have been removed as required by CWRM.

   c. Update on removal of trash, unused man-made structures, equipment and debris that serve no useful purpose, including documenting any reports of such items received from [DLNR], other public or private entities and members of the general public and action taken by [A&B and EMI] to remove the reported items.

   d. The method and timeline for discontinuing the diversion of water from Waipio and Hanehoi streams into Hoʻolawa stream, including status updates on implementation.

10. ***[A&B and EMI] may not divert an amount of water exceeding an average of 45 million gallons per day (mgd), averaged annually***, for all permits combined, further subject to all water diverted shall be for reasonable and beneficial uses.

11. For RP S-7266, the area identified as the Hanawī Natural Area Reserve shall be removed from the revocable permit premises. Additionally, A&B/EMI shall continue discussions with DOFAW to identify additional forest reserve lands to be removed from the license areas to be implemented in connection with the issuance of a water lease, if any, or sooner.

12. Require Mahi Pono to advise any third-party lessees that their decisions be based on a month to month revocable permit for water use until a lease is completed.

13.   For the streams in the revocable permit area that have not had interim instream flow standards set, [A&B and EMI] shall continue to clean up and remove debris from the permit areas and staff shall inspect and report every three months on the progress of the clean-up. For the purposes of clean-up, debris shall not include any structures and equipment currently used for the water diversions.

14.   Staff is to inspect the streams and report on whether those lands could be developed for agricultural uses, including the viability of agricultural land or water leases.

(Emphasis added; footnotes omitted.)

Sierra Club appealed BLNR's decisions to the circuit court. The appeal was assigned to the Environmental Court.[11] The County intervened as an appellee. On May 28, 2021, the Environmental Court entered its **Interim Decision** on Appeal. The Interim Decision stated:

2.   The court concludes the Sierra Club's due process rights were violated, because a contested case hearing was required before the BLNR voted on November 13, 2020 to extend A&B's revocable permits.

. . . .

7.   HRS [§] 91-14(g) defines what this court can order. Since the court concludes Sierra Club had a property interest protected by due process rights under the Hawaiʻi Constitution as defined by laws relating to environmental quality, and since the court concludes those rights were prejudiced because of the BLNR's denial of a contested case hearing, the court may "reverse or modify" the BLNR's decision per HRS 91-14(g). ***Here, the court has no record or briefing to objectively decide on any specific modification of the permits***. At the same time, the court does not wish to create unintended consequences or chaos by vacating the permits without knowing the practical consequences of such an order, especially when in seven months (absent further legal developments) there will likely be another hearing to extend the existing [Permits] and new [Permits] will likely replace the existing [Permits]. Therefore:

A.   ***The court hereby orders BLNR to hold a contested case hearing on the Revocable Permits which were approved by BLNR on or about 11/13/20***. The contested case hearing(s) shall be held as soon as practicable. This order

_____

[11]   The environmental courts are divisions of the circuit courts. HRS § 604A-1(a) (2016).

11

is effective immediately.  Pursuant to HRS 91-14(g)(i)[sic], the court reserves jurisdiction[] and expects to appoint a master or monitor to ensure prompt compliance with this order.  The parties are invited to agree on a master or monitor, or promptly (no later than June 7, 2021) submit three names each to the court; and

B.    The court hereby orders that the Revocable Permits approved on or about 11/13/20 be vacated.  However, the effective date of this order is hereby stayed and ***the court reserves jurisdiction to consider any*** ~~additional~~ ***requests from the parties on whether or not the court should modify the existing permits***, and how, or whether the court should leave the existing permits in place until their current expiration date.  If no such further requests are filed by 4:00 p.m. on Wednesday, June 30, 2021, the stay ordered in this paragraph is lifted without further action by the court.  In that event, the Revocable Permits approved on or about 11/13/20 shall automatically be vacated without further order of this court, at 4:00 p.m. on Wednesday, June 30, 2021.  If such ~~further~~ requests are filed, then the stay remains in place and the court reserves jurisdiction until further order while the court considers the requests.

(Emphasis added; strikeouts reflect clarifications made by minute order after entry of the Interim Decision.)

BLNR moved for partial reconsideration of the Interim Decision, entry of an appealable judgment or leave to file an interlocutory appeal, and a stay of enforcement of the Interim Decision.  A&B and EMI filed a partial joinder and asked for the Permits to remain in effect until they expired at the end of 2021.  The County joined in the motion and partial joinder. Sierra Club opposed the motions and asked for changes to the Permits.  The Environmental Court denied BLNR's motion and the joinders.

The Environmental Court entered its Ruling and **Order Modifying Permits** on July 30, 2021.  It stated:

8.    The permits at issue are hereby modified as follows:  the stream diversions covered by the permits at issue are hereby limited to ***no more than 25 million gallons of water per day (averaged monthly)*** from east Maui streams. This limit shall remain in place until the anticipated contested case hearing is held and a decision rendered, or

12

until further order of the court. ***This should be more than enough water to allow all users the water they require, while hopefully reducing apparent or potential waste***. Any provision of the permits at issue contrary to the modification in this paragraph is hereby vacated.

. . . .

10. The court retains jurisdiction to further modify the permits at issue if necessary. This retention of jurisdiction will last until a contested case hearing is held on the permits at issue. If it appears to any party that the court's modification may or is leading to any shortage of water for the County, for Mahi Pono, or for other recognized beneficiaries,[12] that party is welcome to immediately contact the court so that an expedited process can be set to hear and address any problems immediately.

(Emphasis added; original bolding and underscoring omitted.)

The Environmental Court entered its **Findings of Fact, Conclusions of Law and Order** on August 23, 2021. It stated:

D. BLNR shall hold a new hearing on the permits at issue as soon as practicable. It shall be a contested case hearing assuming a proper request is made.

E. The court retains limited jurisdiction to further modify the permits at issue if necessary. This retention of limited jurisdiction will last until further order of the court, or until the contested case hearing on the permits concludes and a decision or order is issued. If it appears to any party that the court's modification [of the Permits] may or is leading to any shortage for the County, for Mahi Pono, or for other recognized beneficiaries, that party may immediately contact the court so that an expedited process can be set to hear and address any problems immediately.

The Environmental Court later issued a supplemental order extending the end date for the Permits "from December 31, 2021 until the earlier of (1) May 1, 2022, (2) the date on which [BLNR] renders a substantive decision on the continuation of the [Permits] for calendar year 2022, or (3) further order of" the

---

[12] Mahi Pono and "recognized beneficiaries" of the Permits other than the County were not parties to the appeal before the Environmental Court.

court.  The court also awarded Sierra Club attorneys fees and costs, apportioned between A&B, EMI, and the County.

BLNR held a contested case hearing on the 2021 and 2022 continuations during December 2021.  BLNR entered a decision and order on June 30, 2022.  It continued the Permits, subject to 23 conditions.  Sierra Club appealed.  The Environmental Court entered a judgment against Sierra Club.  Sierra Club's secondary appeal is pending as No. CAAP-24-0000082.

The Environmental Court waited until BLNR issued its decision and order in the contested case before entering the Final Judgment below on July 27, 2022.  A&B and EMI filed a notice of appeal, resulting in No. CAAP-22-0000516.  The County filed a cross-appeal.  BLNR filed its own appeal, resulting in No. CAAP-22-0000519.  We consolidated the appeals.  BLNR, A&B, EMI, and the County variously argue that the Environmental Court erred by: **(1)** concluding that a contested case hearing was required; **(2)** modifying the Permits; **(3)** denying BLNR's motion for entry of an appealable judgment or for leave to file an interlocutory appeal; and **(4)** awarding attorneys fees and costs to Sierra Club.

## II. STANDARDS OF REVIEW

### A.    Subject Matter Jurisdiction

We review the existence of subject matter jurisdiction de novo under the right/wrong standard.  In re Kanahele, 152 Hawaiʻi 501, 509, 526 P.3d 478, 486 (2023).

14

**B. Agency Appeals**

Our review of the Environmental Court's decisions on Sierra Club's appeal from BLNR's decisions is a secondary appeal; we apply the standards of HRS § 91-14(g) to BLNR's decisions to determine whether the Environmental Court was right or wrong. See Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 120, 424 P.3d 469, 475 (2018). Our review is confined to the record before BLNR. HRS § 91-14(f) (Supp. 2022).

HRS § 91-14 (2012 & Supp. 2022), titled "Judicial review of contested cases," provides:

> (g) Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

**C. Constitutional Law**

We review questions of constitutional law de novo, under the right/wrong standard. Carmichael, 150 Hawaiʻi at 560, 506 P.3d at 224.

D.      **Award of Attorneys Fees and Costs**

We review an award of attorneys fees and costs for abuse of discretion.  Pub. Access Trails Haw. v. Haleakala Ranch Co., 153 Hawaiʻi 1, 21, 526 P.3d 526, 546 (2023).

### III. DISCUSSION

A.      **The Environmental Court had jurisdiction over Sierra Club's appeal from the denial of its request for a contested case hearing, and exceptions to the mootness doctrine apply; the Environmental Court did not have jurisdiction over Sierra Club's appeal from BLNR's decision to continue the Permits.**

We must first determine whether the Environmental Court had subject matter jurisdiction over Sierra Club's appeal.  See State v. Diaz, 128 Hawaiʻi 215, 222, 286 P.3d 824, 831 (2012) (noting that an appellate court has an independent obligation to ensure jurisdiction over each case).  Subject matter jurisdiction may be examined at any stage of an action.  Kanahele, 152 Hawaiʻi at 509, 526 P.3d at 486.

Sierra Club appealed to the circuit court under HRS § 91-14, which applies to "a final decision and order in a contested case[.]"  The denial of a proper request for a contested case is a "final decision and order" appealable under HRS § 91-14.  Kaleikini v. Thielen, 124 Hawaiʻi 1, 26, 237 P.3d 1067, 1092 (2010).  Sierra Club's request for a contested case hearing complied with Hawaii Administrative Rules (**HAR**) § 13-1-29 (eff. 2009) ("Request for hearing").  The Environmental Court (a division of the circuit court) had jurisdiction over Sierra Club's appeal from BLNR's denial of a contested case hearing.

16

It seems that most of the issues presented by these appeals (except for the award of attorneys fees and costs) are moot. BLNR complied with the Environmental Court's Interim Decision, conducted a contested case hearing, and approved the continuation of the Permits for 2021 (and 2022). Sierra Club's secondary appeal is pending as No. CAAP-24-0000082. The 2021 continuation period has ended. But "mootness is an issue of justiciability, not an issue of subject matter jurisdiction." State v. Hewitt, 153 Hawaiʻi 33, 42, 526 P.3d 558, 567 (2023). The "capable of repetition, yet evading review" and "public interest" exceptions to the mootness doctrine apply here, for the reasons explained in Carmichael, 150 Hawaiʻi at 560-62, 506 P.3d at 224-26.

BLNR's decision to continue the Permits for 2021 was made during a public meeting after BLNR denied Sierra Club's request for a contested case hearing. To "determine whether there was a final decision and order in a contested case from which a direct appeal to circuit court can be taken[,]" we must determine whether the proceeding was "a 'contested case' or simply an agency meeting." Bush v. Hawaiian Homes Comm'n, 76 Hawaiʻi 128, 133 & n.2, 870 P.2d 1272, 1277 & n.2 (1994).

During oral argument, Sierra Club's counsel represented that the Hawaiʻi Supreme Court has held all "sunshine" meetings (apparently referring to meetings held under the Sunshine Law, HRS § 92-3) to be contested case hearings. Counsel cited E&J Lounge Operating Co. v. Liquor Commission, 118 Hawaiʻi 320, 189

17

P.3d 432 (2008), <u>Mahuiki v. Planning Commission</u>, 65 Haw. 506, 654 P.2d 874 (1982), <u>Mortensen v. Board of Trustees of the Employees' Retirement System</u>, 52 Haw. 212, 473 P.2d 866 (1970), and <u>Life of the Land, Inc. v. Land Use Commission</u>, 61 Haw. 3, 594 P.2d 1079 (1979).

Counsel is wrong. <u>E&J Lounge</u> concerned a liquor license application; a contested case was required by statute — HRS §§ 281-52 and 281-57. 118 Hawaiʻi at 349-50, 189 P.3d at 461-62. In <u>Mahuiki</u> a contested case on the application for a special management area use permit was also required by statute, HRS § 205A-29. 65 Haw. at 513, 654 P.2d at 879 (citing <u>Chang v. Planning Comm'n</u>, 64 Haw. 431, 436, 643 P.2d 55, 60 (1982) (noting that the "state Coastal Zone Management Act . . . specifically make[s] HRS [§] 91-9 and planning commission contested case procedures applicable to proceedings on SMA use permit applications" (citing HRS § 205A-29 (a)))). In <u>Mortensen</u> a statute — HRS § 88-73 — required a contested case hearing by the Board of Trustees of the Hawaiʻi Employees' Retirement System on state employees' applications for accidental disability retirement benefits. 52 Haw. at 217-18, 473 P.2d at 870. And <u>Life of the Land</u> concerned Land Use Commission proceedings to reclassify land from agricultural to urban; a contested case was required by the statute in effect at the time, HRS § 205-11. <u>See Life of the Land v. Land Use Comm'n</u>, 63 Haw. 166, 169 & n.2, 623 P.2d 431, 436 & n.2 (1981). And in <u>Kaleikini</u>, cited in Sierra Club's brief, HRS § 6E-43 and HAR § 13-300-51 required a

18

contested case hearing by the O'ahu Island Burial Council where a written petition met the procedural requirements of the administrative rules.  124 Hawai'i at 19-20, 237 P.3d at 1085-86.

The dissent cites <u>Kilakila 'O Haleakala v. Board of Land and Natural Resources</u>, 131 Hawai'i 193, 317 P.3d 27 (2013), for the proposition that the Environmental Court had jurisdiction over Sierra Club's appeal from BLNR's decision to continue the Permits.  In <u>Kilakila 'O Haleakala</u> the supreme court held that HAR § 13-5-40(a)(4) *required* a hearing on the conservation district use application, but "no formal contested case hearing was actually held before the BLNR voted to grant the permit[.]" <u>Id.</u> at 201-02, 317 P.3d at 35-36.  The supreme court held that BLNR's decision to approve the application was a final decision and order in *what should have been* a contested case within the meaning of HRS § 91-14.  <u>Id.</u> at 203, 317 P.3d at 37.

Here, Sierra Club concedes that no statute or rule required a contested case on continuation of the Permits.  We explain below that Sierra Club's right to constitutional due process was not violated by BLNR's denial of its request for a contested case hearing.  There having been no requirement for a contested case, the Environmental Court had no jurisdiction over Sierra Club's HRS § 91-14 appeal from BLNR's decision to continue the Permits.[13]

---

[13]    Our holding does not leave Sierra Club without a potential remedy to challenge a BLNR decision continuing a revocable permit under HRS § 171-55 (2011).  HRS § 91-14(a) (2012) provides that "nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law."  Potential

(continued...)

###### B. Constitutional due process did not require that BLNR conduct a contested case hearing.

BLNR must hold a contested case hearing when required by law. See HRS § 91-1 (Supp. 2022) ("'Contested case' means a proceeding in which the legal rights, duties, or privileges of specific parties are *required by law* to be determined after an opportunity for agency hearing." (emphasis added)). A contested case is "required by law" when one is required by: (1) statute; (2) administrative rule; or (3) constitutional due process. Flores, 143 Hawaiʻi at 124, 424 P.3d at 479. Sierra Club concedes that a contested case was not required by statute or administrative rule; it asserts a constitutional due process right.

The supreme court has articulated a 2-step analysis for determining whether a party has a constitutional due process right to a contested case:

> First, this court considers whether the particular interest which claimant seeks to protect by a hearing is "property" within the meaning of the due process clauses of the federal and state constitutions. Second, if this court concludes that the interest is "property," this court analyzes what specific procedures are required to protect it.

Flores, 143 Hawaiʻi at 125, 424 P.3d at 480 (cleaned up).

Once a party shows it has a constitutionally protected property interest, the second step involves a balancing test to determine whether a contested case is required to protect it.

---

[13]     (...continued)
remedies could include an action for declaratory or injunctive relief. See, e.g., Carmichael. Sierra Club sought those remedies in the 2019 Sierra Club Lawsuit, concerning the Permit continuations for 2019 and 2020.

The factors to be balanced are:

> (1)   the private interest which will be affected; [and]
>
> (2)   the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; [against]
>
> (3)   the governmental interest, including the burden that additional procedural safeguards would entail.

Flores, 143 Hawaiʻi at 126-27, 424 P.3d at 481-82 (reformatted) (citation omitted).

### 1.   The interest Sierra Club sought to protect before BLNR was a constitutionally protected property interest.

A&B, EMI, and BLNR argue that Sierra Club did not have a constitutionally protected property interest at issue before BLNR.[14]  Sierra Club argues that its property interest is "founded upon two independent sources of law: [a]rticle XI section 9 of the state constitution and constitutionally protected public trust rights."

Article XI, section 9 of the Hawaiʻi Constitution provides:

> Each person has the right to a clean and healthful environment, *as defined by laws relating to environmental quality*, including control of pollution and conservation, protection and enhancement of natural resources.  Any person may enforce this right against any party, public or private, through appropriate legal proceedings, subject to reasonable limitations and regulation as provided by law.

(Emphasis added.)  "Although a person's right to a clean and healthful environment is vested pursuant to article XI, section 9, the right is defined by existing law relating to

---

[14]   The County doesn't address this issue.

environmental quality."  In re Application of Maui Elec. Co., 141

Hawaiʻi 249, 261, 408 P.3d 1, 13 (2017).  Sierra Club argues that

HRS Chapters 171 (Public Lands, Management and Disposition of),

343 (Environmental Impact Statements), and 205A (Coastal Zone

Management) are the laws relating to environmental quality that

defined its right to a clean and healthful environment at issue

in the BLNR proceeding.

**HRS Chapter 171.**  Sierra Club cites HRS § 171-55 as a

law relating to environmental quality that defines the right

applicable here.[15]  HRS § 171-55 (2011) provided:

> Notwithstanding any other law to the contrary, the board of land and natural resources may issue permits for the temporary occupancy of state lands or an interest therein on a month-to-month basis by direct negotiation without public auction, *under conditions* and rent *which will serve the best interests of the State*, subject, however, to those restrictions as may from time to time be expressly imposed by the board.  A permit on a month-to-month basis may continue for a period not to exceed one year from the date of its issuance; provided that the board may allow the permit to continue on a month-to-month basis for additional one year periods.

(Emphasis added.)

A&B and EMI argue that HRS § 171-55 "does not reference

any environmental provision let alone define any right to a clean

and healthful environment."  But HRS § 171-55 requires that BLNR

continue the Permits "under conditions . . . which will serve the

best interests of the State[.]"  That includes conditions that

ensure a clean and healthful environment by controlling pollution

---

[15]     Sierra Club also cites HRS § 171-58, but that statute doesn't apply to BLNR's decisions to continue the Permits.  Carmichael, 150 Hawaiʻi at 562-63, 506 P.3d at 226-27.

and conserving, protecting, and enhancing natural resources. Haw. Const. art. XI, § 9.

The conditions BLNR placed on continuing the Permits did just that: incorporation of the CWRM order prohibiting out-of-watershed diversions from streams listed as full restoration streams; no water waste; compliance with CWRM's amended IIFS and all conditions required by CWRM's Amended IIFS decision; removal of diversions and fixing of pipe issues; trash cleanup from areas covered by the Permits; reporting on monthly amounts of water used, stream flow restoration and artificial structure removal required by CWRM, and removal of trash, unused man-made structures, equipment, and debris that serve no useful purpose; identification of forest reserve land to be removed from the license areas; and limiting the amount of water that could be diverted. These conditions reflect some of the observations and concerns expressed in the declarations submitted in support of Sierra Club's request for a contested case hearing. HRS § 171-55 — the law under which BLNR continued the Permits — is a law relating to environmental quality that defined Sierra Club's members' constitutional right to a clean and healthful environment in the matter before BLNR.

**HRS Chapter 343.** Sierra Club also relies upon the Hawai'i Environmental Policy Act (**HEPA**). In Carmichael the supreme court held that BLNR's authority to continue the Permits was subject to HEPA's environmental review requirements. 150 Hawai'i at 553, 506 P.3d at 217. The supreme court did not hold

that an environmental assessment was required before the Permits could be continued; rather, it remanded the case to the circuit court to determine whether A&B's "actions" under the Permits are exempt from HEPA's environmental-review process under HRS § 343-6(a)(2) and related administrative rules.[16]  Id. at 571, 506 P.3d at 235.  HEPA is a law relating to environmental quality and, under Carmichael, HEPA is also a law that defined Sierra Club's members' constitutional right to a clean and healthful environment in the matter before BLNR.

**HRS Chapter 205A.**  The Coastal Zone Management Law did not provide authority for BLNR's continuation of the Permits. Sierra Club relies on HRS § 205A-4(b) (2017), which provides:

> The objectives and policies of this chapter and any guidelines enacted by the legislature shall be binding upon actions within the coastal zone management area by all agencies, within the scope of their authority.

BLNR is an "agency" for purposes of HRS Chapter 205A. See HRS § 205A-1 (2017).  BLNR is bound by the Coastal Zone Management objectives and policies when, for example, it determines the shoreline under HRS § 205A-42, or establishes

---

[16]     HRS § 343-6 (2010) provided:

    (a)  After consultation with the affected agencies, the [environmental advisory] council shall adopt, amend, or repeal necessary rules for the purposes of this chapter in accordance with chapter 91 including, but not limited to, rules that shall:

        . . . .

        (2)  Establish procedures whereby specific types of actions, because they will probably have minimal or no significant effects on the environment, are declared exempt from the preparation of an environmental assessment[.]

shoreline setbacks under HRS § 205A-43, or enforces its HRS Chapter 183C conservation district rules under HRS § 205A-43.6 (2017). But HRS Chapter 205A did not provide authority for BLNR to continue the Permits. Although "HRS ch. 205A is a law 'relating to environmental quality' for the purposes of article XI, section 9[ of the Hawaiʻi Constitution,]" Protect & Pres. Kahoma Ahupuaʻa Ass'n v. Maui Plan. Comm'n, 149 Hawaiʻi 304, 313, 489 P.3d 408, 417 (2021), it did not effect BLNR's authority to continue the Permits, and thus did not define Sierra Club's members' constitutional right to a clean and healthful environment in the matter before BLNR.

**The Public Trust.** Sierra Club argues that its property right is also founded upon the public trust. See Haw. Const. art. XI, § 1. Our courts have never held being a beneficiary of the public trust to be a cognizable property interest warranting due process protection. See Keahole Def. Coal., Inc. v. Bd. of Land & Nat. Res., 110 Hawaiʻi 419, 434, 134 P.3d 585, 600 (2006) ("The plain language of [Haw. Const. art. XII, § 4[17]] does not directly support [the claimant]'s contention that it is deprived of a property right and [the claimant] has not directed this court to any case law or statutory authority to support its

---

[17]     Haw. Const. art. XII, § 4 provides:

The lands granted to the State of Hawaii by Section 5(b) of the Admission Act and pursuant to Article XVI, Section 7, of the State Constitution, excluding therefrom lands defined as "available lands" by Section 203 of the Hawaiian Homes Commission Act, 1920, as amended, ***shall be held by the State as a public trust*** for native Hawaiians and the general public.

(Emphasis added.)

interpretation[.]"), abrogated on other grounds by Tax Found. of Haw. v. State, 144 Hawaiʻi 175, 439 P.3d 127 (2019).  In Carmichael, the supreme court held that the "best interests of the State" provision of HRS § 171-55 triggered "BLNR's obligation as a public trustee."  150 Hawaiʻi at 564, 506 P.3d at 228.  But Carmichael was a direct appeal from a lawsuit for declaratory and injunctive relief; it was not a secondary appeal from an agency decision, and the supreme court did not decide whether the plaintiffs in that case had a constitutionally protected property interest under article XI, section 1 of the Hawaiʻi Constitution or the public trust doctrine.  And in Koʻolau Agric. Co. v. Comm'n on Water Res. Mgmt., 83 Hawaiʻi 484, 495-96, 927 P.2d 1367, 1378-79 (1996), the supreme court held that a CWRM water management area designation proceeding — which involved water, a public trust natural resource — need not be conducted as a contested case.

We hold that HRS § 171-55 and HEPA are laws that defined Sierra Club's constitutionally protected interest in a clean and healthful environment in the matter pending before BLNR.  Although those statutes defined Sierra Club's protected interest in the matter before BLNR, neither require a contested case when BLNR decides whether to renew a temporary revocable permit under HRS § 171-55.  That distinguishes this case from those cited by Sierra Club, where contested cases were required by statute or rule.  That also distinguishes this case from Kilakila ʻO Haleakala, cited by the dissent.

26

We must now balance (a) the risk of an erroneous deprivation of Sierra Club's constitutionally protected interest, through the procedures actually used by BLNR and the probable value, if any, of additional or alternative procedural safeguards, with (b) the governmental interest, including the burden that additional procedural safeguards would entail. Flores, 143 Hawaiʻi at 126-27, 424 P.3d at 481-82.

> **2. BLNR's procedures for the November 13, 2020 meeting, Sierra Club's participation in the trial of the 2019 Sierra Club Lawsuit, and the short period of the permit continuances provided reasonable protection from the risk of an erroneous deprivation of Sierra Club's constitutionally protected interest.**

Due process is "not a fixed concept requiring a specific procedural course in every situation." Davis v. Bissen, ___ Hawaiʻi ___, ___, ___ P.3d ___, ___, 2024 WL 934690, at *11 (Mar. 5, 2024) (quoting Sandy Beach Def. Fund v. City Council of City & Cnty. of Honolulu, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989)). It "calls for such procedural protections as the particular situation demands," with its basic elements being "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Id.

BLNR's **Rules** of Practice and Procedure are in HAR title 13, subtitle 1, chapter 1. They are to be "construed to secure the just, speedy, and cost-effective determination of every proceeding." HAR § 13-1-1 (eff. 2009). They let interested persons submit written and oral testimony including data, views, or arguments on agenda items in board meetings. HAR

27

§ 13-1-11.1 (eff. 2009). Required pleadings, applications, submittals, petitions, reports, maps, exceptions, briefs, memoranda, and other papers shall be filed with BLNR. HAR § 13-1-12 (eff. 2009).

BLNR followed the Rules for its November 13, 2020 public meeting. An agenda was published and material was available to the public on DLNR's website before the meeting. A link to upload written testimony was provided. An email address to sign up to present oral testimony was provided. Information about requesting a contested case hearing was provided. Sierra Club was informed of the action being considered by BLNR, and the procedures available to challenge it. Sierra Club had adequate notice, the first element of due process. See Davis, ___ Hawaiʻi at ___, ___ P.3d at ___, 2024 WL 934690, at *12.

Sierra Club also had an opportunity to be heard at a meaningful time and in a meaningful manner. It submitted written testimony and argument (as did many other stakeholders). The audio recording of the meeting has over 18 minutes of oral argument by Sierra Club's attorney. The portion of the meeting concerning continuation of the Permits lasted over three hours. BLNR received over 13,000 pages of material about the Permits from many sources, including Sierra Club. DLNR and CWRM representatives gave presentations. BLNR heard oral testimony from 14 people opposing and supporting the continuations. BLNR conditioned continuation of the Permits upon A&B and EMI complying with several conditions, many of which addressed

concerns that had been expressed by Sierra Club. Sierra Club's members' constitutional property right to a clean and healthful environment was reasonably protected.

Sierra Club argues that it was deprived of due process because a contested case hearing would have allowed it to cross-examine witnesses. As the dissent points out, a contested case hearing is similar in many respects to a trial before a judge. Mauna Kea Anaina Hou v. Bd. of Land and Nat. Res., 136 Hawai'i 376, 380, 363 P.3d 224, 228 (2015). The 2019 Sierra Club Lawsuit was tried during August and September 2020, just two months before the November 13, 2020 BLNR meeting. Sierra Club could and should have cross-examined witnesses during the trial, and included the information it obtained in its written and oral submissions to BLNR. Sierra Club has not identified any other facts it would have been able to elicit during cross-examination in a contested case hearing.

The dissent quotes the Environmental Court's findings and conclusions that "the permits at issue covered the year after the trial" of the 2019 Sierra Club Lawsuit, and that Sierra Club had "new evidence on the permit renewals — information and issues which apparently arose after the trial." Respectfully, if Sierra Club obtained new information in the two months between the end of the trial and BLNR's meeting, it should have been included in its written and oral submissions to BLNR. If the new information was obtained *after* BLNR's meeting, it could not have formed the basis for Sierra Club's contested case hearing request. The

Environmental Court — which was sitting as an appellate court — exceeded its statutory authority and acted outside of its discretion if it considered information not in the record before BLNR. HRS § 91-14(f) (Supp. 2016).

The short one-year duration of the continuations also safeguard Sierra Club's ability to quickly present new issues, evidence, or arguments, or changing circumstances that could affect its members' ongoing interest in a clean and healthful environment. Information Sierra Club obtained after the November 13, 2020 BLNR meeting could have been presented to BLNR when it considered the next year's continuations.[18]

On this record, we hold that BLNR's rules and procedures for its November 13, 2020 meeting, Sierra Club's participation in the 2020 trial of the 2019 Sierra Club Lawsuit, and the short duration of the Permit continuations provided reasonable protection from the risk of an erroneous deprivation of Sierra Club's members' protected interest in a clean and healthful environment.

---

[18] The contested case hearing on the 2021 and 2022 Permit continuations was held in December 2021. Sierra Club's secondary appeal from BLNR's decision is pending as No. CAAP-24-0000082.

BLNR met on November 10, 2022, to consider continuing the Permits for 2023. Sierra Club again requested a contested case. BLNR denied the request. BLNR approved continuing the Permits for 2023. Sierra Club appealed, resulting in 1CCV-22-0001506. The Environmental Court remanded for BLNR to conduct a contested case hearing, and modified the conditions for continuation of the Permits. A&B and EMI's appeal is docketed as No. CAAP-24-0000113. BLNR's appeal is docketed as No. CAAP-24-0000114.

BLNR met on December 7 and 8, 2023, to consider continuing the Permits for 2024. See https://dlnr.hawaii.gov/wp-content/uploads/2023/12/Agenda-231207.pdf (https://perma.cc/76JH-X8GH) (last visited Mar. 28, 2024). The minutes of the meeting are not yet available, and we do not know whether Sierra Club requested another contested case.

3.      **The governmental interests and burdens that a contested case proceeding would entail outweighed the marginal additional protection it could provide to Sierra Club.**

We must balance the interests of all parties when deciding whether constitutional due process requires a contested case in any particular situation.  As to the governmental interests, we consider not only the State's administrative and fiscal burdens directly imposed by a contested case; we also consider the burden and impact on the County, including its ability to provide water to communities served by its water systems that rely on water diverted under the Permits.

Contested cases impose "fiscal and administrative burdens on the state[,]" In re Applications of Herrick, 82 Hawaiʻi 329, 345, 922 P.2d 942, 958 (1996), and "contested-case proceedings are generally more costly, time consuming, and burdensome than public hearings[,]" E&J Lounge, 118 Hawaiʻi at 343 n.32, 189 P.3d at 455 n.32 (citing E&J Lounge Operating Co. v. Liquor Comm'n, 116 Hawaiʻi 528, 549, 174 P.3d 367, 388 (App. 2007), vacated, 118 Hawaiʻi 320, 189 P.3d 432 (2008)).  The Hawaiʻi Administrative Procedure Act requires that parties to contested cases be given written notice by registered or certified mail with return receipt requested, or by publication. HRS § 91-9.5 (2012).  The agency must make findings of fact and conclusions of law.  HRS § 91-12 (2012).[19]  If the agency

_____

[19]      In Carmichael, the supreme court held that "BLNR must make findings sufficient to enable an appellate court to track the steps that the agency took in reaching its decision."  150 Hawaiʻi at 567, 506 P.3d at 231 (cleaned up).  Carmichael was a direct appeal from a lawsuit for declaratory

(continued...)

31

officials who are to make the final decision haven't heard and examined all the evidence (which commonly occurs when the officials are volunteers, as are BLNR members, see HRS § 171-4(f) (Supp. 2014)), no final decision can be made until a proposed decision containing a statement of reasons and a determination of each issue of fact or law necessary to the decision has been served on each party adversely affected. HRS § 91-11 (2012). The affected parties then have the right to file exceptions and present argument to the officials who will render the final decision. Id. These requirements impose significant fiscal and administrative burdens upon BLNR, and upon DLNR staff.

Citing Flores, 143 Hawaiʻi at 127 & n.7, 424 P.3d at 482 & n.7, the dissent notes that if a future contested case hearing would overlap a previous hearing, due process would not mandate a repetitive hearing in light of the "duplicative administrative burden" on the State. Here, Sierra Club and the State completed a lengthy — and most likely expensive — trial over the Permit continuations for 2019 and 2020 just two months before BLNR met to consider the 2021 continuations. This weighs against requiring the State to conduct a contested case hearing under the circumstances of this case.

---

[19] (...continued)
and injunctive relief; it was not an appeal under HRS § 91-14, and the supreme court did not cite HRS § 91-12 as authority for requiring that BLNR make findings of fact. Carmichael was decided on March 3, 2022. When BLNR met on November 13, 2020, there was no statute, rule, or judicial precedent requiring that BLNR make written findings to support decisions made during public meetings. We note that for decisions made during a public meeting, rather than after a contested case hearing, BLNR could refer to its staff submittals or other evidence in the meeting record to support its decision. The meeting record and minutes should be sufficient for an appellate court to track the agency's steps.

A contested case on continuation of the Permits would also place a burden on another government entity — the County — and on more than 35,000 people living and working in Upcountry Maui who rely on diverted water provided by the County's Department of Water Supply.  The Permits authorized delivery of 8.6 million gallons of water per day to County water treatment facilities that provide the majority of water to Upcountry Maui.  Carmichael, 150 Hawaiʻi at 553, 506 P.3d at 217.  The County's Upcountry Water System serves the communities of Kula, Haʻikū, Makawao, Pukalani, Hāliʻimaile, Waiakoa, Kēōkea, Waiohuli, ʻUlupalakua, Kanaio, Olinda, Ōmaʻopio, Kula Kai, and Pūlehu.  By 2030, the population of these communities is expected to grow to more than 43,000 people.  The County also provides water diverted under the Permits to the Kula Agricultural Park, which contains 31 farm lots ranging in size from 7 to 29 acres.  If a contested case on continuing the Permits is not concluded before the Permits expire, the County will have to devote significant time and resources to provide tens of thousands of Maui residents with alternate access to water, with no guarantee of success.  BLNR found, in the contested case on A&B and EMI's 2001 long-term water lease application:

> If Upcountry Maui's main source of water supply were curtailed, the deficit could not be made up by other portions of [the County]'s water system because the Upcountry system is separate and distinct from the water systems serving other regions of Maui.  Cutting off Upcountry Maui's main public water supply completely would result in **a public health crisis and economic catastrophe**.

(Emphasis added.) These burdens distinguish this case from Davis, where the supreme court held that a hearing conducted after the houseless plaintiffs' personal property was impounded, thus eliminating any further danger to public health and safety, "would not have significantly burdened the County." ___ Hawaiʻi at ___, ___ P.3d at ___, 2024 WL 934690, at *13.

Balancing the minimal additional protection a contested case would have provided to Sierra Club under the circumstances of this case against the annual fiscal and administrative burdens a contested case would impose on BLNR and the County (and potentially on those living or working in Upcountry Maui), we hold that Sierra Club was not denied constitutional due process by BLNR's denial of its request for a contested case hearing. Sierra Club's members' interest in a clean and healthful environment would be more appropriately addressed in the ongoing contested case on A&B and EMI's 2001 long-term water lease application, rather than an unnecessarily burdensome — and potentially annual — contested case on the short-term Permits.

### C. The Environmental Court erred by modifying the conditions BLNR placed upon continuation of the Permits for 2021.

The Environmental Court cited HRS § 91-14(g) as authority for its modification of BLNR's conditions for continuing the Permits for 2021. HRS § 91-14(g) allows a circuit court to "modify the decision and order" of an agency in a contested case from which an appeal is taken. The Environmental Court did not have jurisdiction over Sierra Club's appeal from

BLNR's decision to continue the Permits for 2021, because that decision was not made in a contested case and did not need to be made after a contested case hearing.

Sierra Club argues that the Environmental Court had equitable jurisdiction under HRS § 604A-2(b) to modify BLNR's conditions. The statute provides:

> (a) The environmental courts shall have exclusive, original jurisdiction over all proceedings, including judicial review of administrative proceedings . . . authorized under chapter 91, arising under . . . title 12;
>
> . . . .
>
> (b) ***In any case in which it has jurisdiction***, the environmental courts shall exercise general equity powers as authorized by law.

HRS § 604A-2 (2016 & Supp. 2018) (emphasis added).

HRS Title 12 deals with Conservation and Resources and includes HRS § 171-55. The Environmental Court has exclusive jurisdiction over appeals from BLNR's decisions *in contested cases* to continue temporary revocable permits under HRS § 171-55. But BLNR's decision to continue the Permits for 2021 was made during a public meeting, not a contested case hearing. The Environmental Court did not have equitable power to modify BLNR's conditions because it did not have jurisdiction over Sierra Club's appeal from BLNR's decision to continue the Permits.

The dissent cites the supreme court's statement in Carmichael that on remand, "the circuit court should continue to exercise its equitable power as it pertains to the municipal — and residential — water needs of the upcountry Maui community." 150 Hawaiʻi at 572, 506 P.3d at 236. Carmichael was a civil

action for declaratory and injunctive relief over which the circuit court had original jurisdiction. That is why it was authorized, under HRS § 604A-2(b), to exercise equitable power.

Even if the Environmental Court had jurisdiction under HRS § 91-14, the procedure it used to modify BLNR's conditions exceeded its statutory authority. Our government

> is one in which the sovereign power is divided and allocated among three co-equal branches. Thus, we have taken the teachings of the Supreme Court to heart and adhered to the doctrine that the use of judicial power to resolve public disputes in a system of government where there is a separation of powers should be limited to those questions capable of judicial resolution and presented in an adversary context. And, we have admonished our judges that even in the absence of constitutional restrictions, they must still carefully weigh the wisdom, efficacy, and timeliness of an exercise of their power before acting, ***especially where there may be an intrusion into areas committed to other branches of government.***

Tax Found. of Haw., 144 Hawaiʻi at 190, 439 P.3d at 142 (emphasis added).

Administrative agencies are part of the Executive branch. A circuit court reviewing an agency's final decision and order in a contested case under HRS § 91-14 acts as an appellate court. Diamond v. Dobbin, 132 Hawaiʻi 9, 24, 319 P.3d 1017, 1032 (2014). Its review is confined to the record that was before the agency. HRS § 91-14(f). It does not make findings of fact; it determines whether the agency's findings of fact were clearly erroneous in view of the reliable, probative, and substantial evidence in the record. HRS § 91-14(g)(5); Diamond, 132 Hawaiʻi at 24, 319 P.3d at 1032. It reviews the agency's conclusions of law de novo, under the right/wrong standard. HRS § 91-14(g)(1), (2), and (4); Kilakila ʻO Haleakala v. Bd. of Land & Nat. Res.,

138 Hawaiʻi 383, 395-96, 382 P.3d 195, 207-08 (2016).  Where mixed questions of fact and law are presented, a circuit court must defer to an agency's expertise and experience in its field and must not substitute its judgment for that of the agency.  Dole Haw. Div.-Castle & Cooke, Inc. v. Ramil, 71 Haw.  419, 424, 794 P.2d 1115, 1118 (1990).  A court "cannot consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the finding of an expert agency in dealing with a specialized field."  Sierra Club v. D.R. Horton-Schuler Homes, LLC, 136 Hawaiʻi 505, 522, 364 P.3d 213, 230 (2015) (cleaned up).

If a circuit court concludes that additional evidence is material to the agency's decision and there were good reasons why the parties did not present the evidence to the agency, it may order that the evidence be presented *to the agency*, and allow the *agency* to modify its findings, decision, and order.  HRS § 91-14(e) (2012).  It can then review the agency's modified findings, conclusions, and decision and order, if necessary, under the appropriate appellate standards of review.

The Interim Decision stated that the Environmental Court "has no record or briefing to objectively decide on any specific modification of the permits."  Yet, the Order Modifying Permits made a *finding* that limiting the stream diversions "to no more than 25 million gallons of water per day" "should be more

than enough water to allow all users the water they require, while hopefully reducing apparent or potential waste." The Environmental Court in effect eliminated the 8.6 million gallons of water per day diverted to the County for use by Upcountry Maui residents, plus 11.4 million more gallons per day, based on its own findings of fact, and on information that was never presented to BLNR. The Environmental Court substituted its judgment for that of BLNR, an expert agency dealing with a specialized field. In so doing, the court exceeded its authority under HRS § 91-14. See D.R. Horton-Schuler Homes, LLC, 136 Hawai‘i at 522, 364 P.3d at 230.

We hold that a circuit court's authority under HRS § 91-14(g) to modify an agency's decision and order in a contested case is limited to correcting conclusions of law that were wrong, either because the findings of fact upon which the conclusions were based were clearly erroneous, the wrong law was applied, or the right law was applied incorrectly. The circuit court is not authorized to make its own findings of fact. Nor is it authorized to substitute its judgment about the application of public policy to the facts for that of the agency, which is constitutionally delegated that power.

> D.     **Sierra Club was not entitled to recover attorneys fees or costs under the private attorney general doctrine.**

In Hawai‘i litigants are responsible for their own attorneys fees and costs unless an award is allowed by statute, court rule, agreement, stipulation, or precedent. Sierra Club v.

Haw. Dep't of Transp., 120 Hawaiʻi 181, 218, 202 P.3d 1226, 1263 (2009) (**Superferry**).  One such precedent is the private attorney general doctrine, upon which Sierra Club relied in both of its motions for fees and costs.

Sierra Club correctly asserts that the private attorney general doctrine

> is an equitable rule that allows courts in their discretion to award [attorney's] fees to plaintiffs who have vindicated important public rights.  Courts applying this doctrine consider three basic factors: (1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, [sic] (3) the number of people standing to benefit from the decision.

Superferry, 120 Hawaʻi at 218, 202 P.3d at 1263.  In Superferry, Sierra Club was awarded attorneys fees because "Sierra Club prevailed on the merits of the claim requiring preparation of an [environmental assessment] pursuant to HRS chapter 343" and was "responsible for establishing the principle of procedural standing in environmental law in Hawaiʻi and clarifying the importance of addressing the secondary impacts of a project in the environmental review process pursuant to HRS chapter 343." Id. at 217, 220, 202 P.3d at 1262, 1265.

In the other case cited by Sierra Club, Honolulu Constr. & Draying Co. v. Dep't of Land & Nat. Res., 130 Hawaiʻi 306, 310 P.3d 301 (2013) (**Irwin Park**), Scenic Hawaiʻi defeated Aloha Tower Development Corporation's petition to expunge a restriction in the State's deed for Irwin Park.  The supreme court held that "an organization may seek to vindicate public

policy through litigation on discrete issues, so long as the resolution of the litigation in favor of the organization vindicates a public policy goal, and that policy satisfies the first prong of the test."  Id. at 315, 310 P.3d at 310.  The important public policy goal vindicated in Irwin Park was "preserving public parks and historic sites."  Id.

Sierra Club argues that it vindicated the important public policy of requiring a contested case hearing before BLNR could continue the Permits, and significantly reduced the amount of water A&B and EMI could divert under them.  Here we hold a contested case was not required before BLNR decided whether to continue the Permits for 2021, and the Environmental Court did not have jurisdiction to modify the conditions BLNR imposed upon the continuations.  Sierra Club did not vindicate any important public policy.  It was not entitled to an award of attorneys fees or costs under the private attorney general doctrine.

We need not decide whether the Environmental Court erred by denying BLNR's motion for entry of an appealable judgment or for leave to file an interlocutory appeal.

**IV. CONCLUSION**

Sierra Club was not constitutionally entitled to a contested case hearing under the circumstances presented here; the Environmental Court did not have jurisdiction over Sierra Club's appeal from BLNR's decision to continue the Permits for 2021 or to modify the conditions under which the Permits were

continued; and Sierra Club was not entitled to attorneys fees or costs.

The Environmental Court's May 28, 2021 Interim Decision on Appeal; July 30, 2021 Order Modifying Permits; August 23, 2021 Findings of Fact, Conclusions of Law and Order; December 27, 2021 supplemental order extending the end date for the Permits; and February 2, 2022 and July 12, 2022 orders awarding Sierra Club attorneys fees and costs are vacated. The July 27, 2022 Final Judgment is reversed. BLNR's decision to deny Sierra Club's request for a contested case hearing is affirmed.


On the briefs:                          /s/ Katherine G. Leonard
                                        Acting Chief Judge
David Kimo Frankel,
for Appellant-Appellee/                 /s/ Keith K. Hiraoka
Cross-Appellee and                      Associate Judge
Appellant-Appellee
Sierra Club.

Mariana Löwy-Gerstmar,
Kristin K. Tarnstrom,
Deputies Corporation Counsel,
County of Maui,
for Appellee-Appellee/
Cross-Appellant and
Appellee-Appellee County of Maui.

David Schulmeister,
Trisha H.S.T. Akagi,
Mallory T. Martin,
for Appellees-Appellants/
Cross-Appellees and
Appellees-Appellees Alexander
and Baldwin, Inc. and East Maui
Irrigation Co., LLC.

Julie H. China,
Linda L.W. Chow,
Melissa D. Goldman,
Deputy Attorneys General,
State of Hawai'i,

```
for Appellee-Appellee/Cross-Appellee
and Appellee-Appellant Board of Land
and Natural Resources.
```

DISSENTING OPINION by Nakasone, J.

While I agree with the Majority in Part III.B.I., I respectfully dissent from the remainder of the Majority's Opinion, as to the application of the second and third Sandy Beach due process factors in Part III.B.2. and III.B.3., and as to Part III.A. and III.C. regarding jurisdiction. I would hold that the Environmental Court did not err in concluding that a contested case hearing was required by due process under the specific circumstances of this case, and that it had jurisdiction over Sierra Club's appeal of BLNR's decision to grant the continuation of the Permits and to modify the Permits. Because I would affirm the Environmental Court on these issues, I also dissent from Part III.D. (denying recovery of attorney's fees and costs under the private attorney general doctrine).

**Due process required a contested case hearing.**

Regarding the second Sandy Beach factor, evaluating "the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards[,]" I would hold that this factor weighed in favor of a contested case hearing. Sandy Beach Def. Fund v. City Council of City & Cnty. of Honolulu, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989). Sierra Club set forth the issues it sought to challenge in its petition for a contested case before BLNR. While the November 13, 2020 public meeting provided an opportunity for Sierra Club to be heard, this format did not permit a meaningful opportunity to challenge the permit applicant by cross-examination of the applicant's witnesses' testimony under oath. There was risk of erroneous deprivation even though the duration of the Permits was short, where the Permits had been continued annually for twenty years with no prior contested case hearing ever having been conducted on the constitutional interests Sierra Club sought to protect in this case.

In Carmichael v. Bd. of Land & Nat. Res., the Hawaiʻi Supreme Court explained that "when appraising the legislative history of Hawaii Revised Statutes (**HRS**) chapter 171 as a whole, it is clear that BLNR's power to issue and continue revocable permits under HRS § 171-55 was intended to be narrowly exercised."  150 Hawaiʻi 547, 564, 506 P.3d 211, 228 (2022).  In construing the "best interests of the State" language in HRS § 171-55 (2011), the supreme court cautioned that BLNR performs as a public trustee of the State's water resources, and "is duty bound to demonstrate that it has properly exercised the discretion vested in it by the constitution and the statute." Id. at 566, 506 P.3d at 230 (cleaned up).

> A contested case hearing is similar in many respects to a trial before a judge: the parties have the right to present evidence, testimony is taken under oath, and witnesses are subject to cross-examination. It provides a high level of procedural fairness and protections to ensure that decisions are made based on a factual record that is developed through a rigorous adversarial process.

Mauna Kea Anaina Hou v. Bd. of Land &  Nat. Res., 136 Hawaiʻi 376, 380, 363 P.3d 224, 228 (2015).  Given the significant amount of the public trust resource of water at issue, the importance of Sierra Club's asserted constitutionally protected interest, and the substantive economic and environmental issues raised by Sierra Club in its petition, the trial-like protections of a contested case hearing would guard against the risk of erroneous deprivation.

Appellees Alexander & Baldwin, Inc. (**A&B**) and East Maui Company, Limited (**EMI**) (collectively, **Appellees**) and BLNR argued below to the Environmental Court, and again in this appeal, that Sierra Club already had the opportunity to litigate "virtually identical" issues in the 2020 trial (**2020 Trial**) on the 2019 Lawsuit.  I do not agree that Sierra Club's participation in the 2020 Trial was an adequate alternative procedural safeguard, where the Environmental Court judge, who was the same judge that presided over the 2020 Trial, specifically found otherwise.  See Sandy Beach, 70 Haw. at 378, 773 P.2d at 261.  The Environmental

44

Court found that this case involved "some significantly different facts" from the 2020 Trial; that "the permits at issue covered the year after the trial" and "[t]hings change with time"; that Sierra Club had "new evidence on the permit renewals -- information and issues which apparently arose after the trial"; and that "[t]he new information and issues are relevant and are not insignificant."  Finding of Fact (**FOF**) 9, Conclusion of Law (**COL**) 7.  While the parties disagree on the Environmental Court's characterization of what issues or evidence were "new" or not, I cannot conclude that this particular finding and mixed factual/legal determination was clearly erroneous.  For the reasons above, I would conclude the second Sandy Beach factor weighs in favor of a contested case hearing.

Regarding the third Sandy Beach factor on the "governmental interest, including the burden that additional procedural safeguards would entail[,]" 70 Haw. at 378, 773 P.2d at 261, this case is distinguishable from Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 424 P.3d 469 (2018), upon which the Appellees and BLNR rely.  In Flores, the supreme court held that the petitioner was not entitled to a second contested case hearing on the Mauna Kea telescope sublease, when he had already participated in a prior contested case hearing on the Mauna Kea telescope Conservation District Use Permit regarding the impact of telescope construction on his constitutionally protected cultural rights.  Id. at 127-28, 424 P.3d at 482-83.  Here, the specter of floodgates of contested case hearings creating annual fiscal and administrative burdens for every future water permit continuation is speculative and premature, since we cannot presume that a contested case hearing will be requested in every similar case, or that BLNR would be required by due process to grant such in every case.  The concern over the possibility of an increase in future contested case hearing requests is not a basis to deny a contested case hearing in this particular case.  Each request must be evaluated under the Sandy Beach factors to determine whether, under the particular context and circumstances

presented, due process requires a contested case hearing in that case.  Flores, 143 Hawaiʻi at 126-27, 424 P.3d at 481-82.  Under Flores, depending on the circumstances, if the interests in a future contested case hearing "would appear to overlap entirely" with a previously conducted contested case hearing, then due process would not mandate a repetitive hearing in light of the "duplicative administrative burden" on the State.  Id. at 127, 127 n.7, 424 P.3d at 482, 482 n.7.  Even when a hearing is granted, the contested case hearing officer retains discretion to "avoid unnecessary or repetitive evidence" by "limit[ing] the number of witnesses, the extent of direct or cross examination or the time for testimony upon a particular issue."  HAR § 13-1-32(h) (2009).  Finally, in light of Carmichael's clarification that BLNR must issue FOFs and COLs to support a "best interests of the State" determination to grant a permit continuation under HRS § 171-55, 150 Hawaiʻi at 566-67, 506 P.3d at 230-31, and because FOFs and COLs are also required in contested case hearings, see HRS § 91-12 (2012) and HAR § 13-1-38 (2009), I would conclude that the administrative burden is not duplicative.  For these reasons, I would conclude the third Sandy Beach factor weighs in favor of a contested case hearing.

**The Environmental Court had jurisdiction over BLNR's decision to grant the Permits, and also had jurisdiction to modify the Permits.**

I would hold that the Environmental Court had jurisdiction over BLNR's decision to continue the Permits because both the denial of the contested case hearing and BLNR's subsequent decision to grant the continuation of the Permits constitute a "final decision . . . in a contested case" that qualifies for judicial review under HRS § 91-14(g) (2012 & 2022 Supp.).  See Cmty. Ass'n of Hualalai, Inc. v. Leeward Plan. Comm'n (Hualalai), 150 Hawaiʻi 241, 256, 500 P.3d 426, 441 (2021)

(citing <u>Pub. Access Shoreline Haw. v. Haw. Cnty. Plan. Comm'n (PASH)</u>, 79 Haw. 425, 431, 903 P.2d 1246, 1252 (1995)).  In <u>Hualalai</u>, the Hawaiʻi Supreme Court explained that a "final decision" under HRS § 91-14(g) "can take the form of an agency's formal denial of a party's request for a contested case hearing[.]"  <u>Id.</u> (citing <u>Kaleikini v. Thielen</u>, 124 Hawaiʻi 1, 26, 237 P.3d 1067, 1092 (2010)).  "An agency's failure to deny or grant a party's request for a contested case hearing followed by agency action that effectively ends the proceeding may also constitute a final decision."  <u>Id.</u> (citing <u>Kilakila ʻO Haleakala v. Bd. of Land & Nat. Res. (Kilakila)</u>, 131 Hawaiʻi 193, 202-03, 317 P.3d 27, 36-37 (2013)).

Here, BLNR denied the request for a contested case, then subsequently voted to grant the continuation of the Permits. In its appeal to the Environmental Court, the Sierra Club requested the Environmental Court reverse both of BLNR's decisions, i.e. the denial of contested case hearing and the granting of the continuation of the Permits.  Similarly, the petitioners in <u>Kilakila</u> appealed both BLNR's decision approving the permit in that case and the lack of decision either granting or denying the request for contested case hearing.  131 Hawaiʻi at 202, 317 P.3d at 36.  The <u>Kilakila</u> court held that a contested case hearing should have been held; vacated the circuit court's order granting the dismissal of the petitioners' appeal; and "remand[ed] to the circuit court for further proceedings consistent with this opinion regarding [petitioners'] request for stay or reversal of the conservation district use permit granted by BLNR . . . ."  <u>Id.</u> at 206, 317 P.3d at 40.  The circuit court in <u>Kilakila</u> had jurisdiction over BLNR's decision on the permit,

47

even though no contested case hearing had been held.  See id.  In addition, HRS § 91-14(i) further provides:  "[w]here a court remands a matter to an agency for the purpose of conducting a contested case hearing, the court may reserve jurisdiction and appoint a master or monitor to ensure compliance with its orders."  Thus, I would conclude that the Environmental Court had jurisdiction over BLNR's decision to continue the Permits here under HRS § 91-14(g); and that the Environmental Court correctly concluded in COL 12 that it had jurisdiction to "reverse or modify" BLNR's decision, where the denial of a contested case hearing had prejudiced Sierra Club's substantial rights.  See HRS § 91-14(g), (i); Kilakila, 131 Hawaiʻi at 202, 317 P.3d at 36.

Because the Environmental Court had jurisdiction under HRS § 91-14 and HRS § 604A-2(a) (2016 & 2022 Supp.), I would also conclude that it had equitable jurisdiction under HRS § 604A-2(b)'s mandate that the Environmental Court "shall exercise general equity powers as authorized by law."[20]  In lieu of vacating the Permits, the Environmental Court modified them to limit the amount of water diverted,[21] invoking its equity powers to avoid "unintended consequences or chaos by vacating the [P]ermits" and to "not risk a vacuum which causes hardship to those on Maui who rely on the water at issue."  See COL 14.  The Environmental Court also invoked its "inherent equitable

---

[20]     There is no Hawaiʻi precedent to guide the lower courts on the interpretation and application of this unique provision conferring equity powers on the Environmental Court.

[21]     The Environmental Court arrived at the 25 million gallons of water per day limit after providing opportunity for input to all the parties, but only receiving input from one.  See FOF 13 ("The Sierra Club was the only party which offered the court concrete and specific options and support for how to modify the defective permits and not leave a vacuum until BLNR conducts a contested case hearing.").

powers"[22] under HRS § 603-21.9 (2016), which states that circuit courts "shall have power" to make orders, and "do such other acts and take such other steps as may be necessary . . . for the promotion of justice in matters pending before them."  Equity jurisprudence is flexible and adaptable to the situation presented, allowing a court to "mold its decrees to do justice amid all the vicissitudes and intricacies of life."  Fleming v. Napili Kai, Ltd., 50 Haw. 66, 70, 430 P.2d 316, 319 (1967) (citation and internal quotation marks omitted).  "The principles upon which [equity] proceeds are eternal; but their application in a changing world will necessarily change to meet changed situations."  Id. (citation and internal quotation marks omitted).  I would hold that the Environmental Court did not abuse its equitable power under HRS § 604A-2(b) and HRS § 603-21.9, after receiving input from the parties, in fashioning the relief it deemed appropriate to the situation at hand, by modifying the Permits.  See Carmichael, 150 Hawaiʻi at 572, 506 P.3d at 236 (remanding to the circuit court in an injunctive relief action and stating that "the circuit court should continue to exercise its equitable power as it pertains to the municipal-and [sic] residential-water needs of the upcountry Maui community"); Fleming, 50 Haw. at 70, 430 P.2d at 319.

> /s/ Karen T. Nakasone
> Associate Judge

---

[22]    In its order, the Environmental Court cited Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawaiʻi 494, 507, 880 P.2d 169, 182 (1994), and Jenkins v. Wise, 58 Haw. 592, 598, 574 P.2d 1337, 1342 (1978), which concern the exercise of a circuit court's inherent powers under HRS § 603-21.9.